**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| STARSTONE NATIONAL | ) | |
| INSURANCE COMPANY and | ) | |
| ARCH SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-04398-JPB |
| | ) | |
| WALDROP PARK CONDOMINIUM | ) | |
| ASSOCIATION, INC., ARDENT | ) | |
| RESIDENTIAL, LLC, CURTIS | ) | |
| GILSTRAP AND JESSICA | ) | |
| GILSTRAP, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF ARCH SPECIALTY INSURANCE COMPANY'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Arch Specialty Insurance Company ("Arch") files its Memorandum of Law in Support of Its Motion for Summary Judgment, showing the Court as follows:

Arch requests that the Court enter summary judgment in its favor, finding that as a matter of law, Defendant Waldrop Park Condominium Associations, Inc. ("Waldrop Park") and Defendant Ardent Residential, LLC ("Ardent") breached the notice condition of the commercial general liability insurance policy issued by Arch

because they failed to provide notice of the shooting of Curtis Gilstrap until over seventeen (17) months after it happened. Because the policy required them to provide notice "as soon as practicable," which has been interpreted to mean immediately, Waldrop Park and Ardent's delay in providing notice of the shooting is a violation of the notice condition of the policy as a matter of law and they cannot show that they had a legally sufficient excuse for their over seventeen (17) month delay in providing notice. Because of their violation of the notice condition of the policy, Waldrop Park and Ardent forfeited coverage under the policy.

In the alternative, if the Court determines that Waldrop Park and Ardent did not breach the notice condition of the policy as a matter of law, then Arch requests that the Court declare that the policy does not provide coverage for the claim for punitive damages asserted in the lawsuit filed against Waldrop Park and Ardent because the policy specifically excludes coverage for punitive damages.

## I.      Background Information

This declaratory judgment action primarily concerns whether Waldrop Park and Ardent forfeited coverage under the policy issued by Arch because they failed to comply with the notice condition of the policy by providing Arch notice of the shooting of Curtis Gilstrap "as soon as practicable." In the alternative, the action

concerns whether the policy provides coverage for the punitive damages claim asserted in the underlying action.

## A. The Underlying Lawsuit.

On March 13, 2020, Curtis Gilstrap and Jessica Gilstrap filed their Complaint in the lawsuit styled *Curtis Gilstrap and Jessica Gilstrap v. Waldrop Park Condominium Association, Inc. and Ardent Residential, LLC*, Case No. 20A796753, State Court of Dekalb County, Georgia (the "Underlying Complaint").[1] (Ardent's Responses to Arch's RFAs, Response No. 1 and Ex. A; WP's Responses to Arch's RFAs, Response No. 1 and Ex. A)[2] The claims asserted by the Gilstraps arise out of the shooting of Curtis Gilstrap on April 12, 2018 at a condominium complex known as Waldrop Park located at 11101 Waldrop Place, Decatur, Georgia 30034 (the "Premises"). (*See generally* Underlying Complaint) The Gilstraps allege that at the time of the April 12, 2018 shooting, Waldrop Park and Ardent "owned, operated, controlled, and/or managed" the Premises. (*Id.* at ¶ 15)

The Gilstraps assert that Waldrop Park and Ardent were negligent in, *inter alia*, failing to keep the Premises safe, failing to properly maintain and inspect the

---

[1] A copy of the Underlying Complaint is attached hereto as Exhibit A.

[2] Copies of Ardent's Responses to Arch's Request to Admit and Arch's Request to Admit are attached as Exhibit B; Waldrop Park's Responses to Arch's Request to Admit and Arch's Requests to Admit are attached as Exhibit C).

Premises and failing to properly train and supervise employees. (*Id*. at ¶ 27) The Gilstraps seek recovery of, *inter alia*, compensatory damages and punitive damages. (*Id*. at ¶ 46)

**B. The Arch Policy.**

Arch issued Policy No. AGL0047333-00 to the Named Insured "Waldrop Park Condominium Association" for the policy period of May 15, 2017 to May 15, 2018 (the "Arch Policy").[3]  Although Ardent is not identified specifically as an insured on the Policy, Section II – Who Is An Insured states that the following is also an insured: "Any person (other than your 'employee' or 'volunteer worker'), or any organization while acting as your real estate manager." Thus, to the extent Ardent was operating as the real estate manager for the Premises, it qualifies as an insured.

The Arch Policy contains, *inter alia*, the following conditions:

> **SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**
> …
> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which

---

[3] A certified copy of the Arch Policy is attached as Exhibit D.

may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

…

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

The Arch Policy contains the following endorsements:

## Claims Handling Procedures

An important value of your insurance coverage is the ability of the insurance company to respond when you

have a claim. Arch Specialty Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Specialty Insurance Company
Contract Binding Operations Claims
1299 Farnam Street, Suite 500
P.O. Box 542033
Omaha, NE 68154
Phone: 877 688-ARCH (2724)
Fax: 866 266-3630
E-mail: Claims@ArchInsurance.com

You will be contacted by a representative of the company's Claim Department. This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to legal counsel if necessary, and discuss further handling of the claim.

and

## PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and **Paragraph 2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages.

6

All other terms and conditions of this Policy remain unchanged.

### C. Waldrop Park and Ardent's Knowledge of the Shooting and Notice to Arch.

Counsel for the Gilstraps sent Josh Morton, Ardent's property manager, a letter of representation dated May 22, 2018. (Ardent's Responses to Arch's RFAs, Response No. 9)[4] Ardent received the letter on May 22, 2018 and forwarded it to Waldrop Park's counsel. (Ardent's Responses to Arch's RFAs, Response No. 10 and 11 and Exs. B and C; WP's Responses to Arch's RFAs, Response Nos. 7 and 8; 30(b)(6) Deposition of Waldrop Park ("WP Depo."), pp. 28:13-29:14)[5] Waldrop Park's counsel forwarded the May 22, 2018 letter of representation to Waldrop Park's insurance agent, Hamby & Alosio on May 23, 2018 and asked Hamby & Alosio to notify Waldrop Park's insurers on Waldrop Park's behalf because he recognized that a potential claim could be asserted. (Response No. 32; 30(b)(6) Victor Malone Hamby Deposition ("H&A Depo."), p. 42:2-20 and Exhibit 7; WP Depo., pp. 35:18-36:7, 62:15-22, 98:4-12, 100:3-13)[6] Waldrop Park expected that Hamby & Aloisio would place its carriers on notice of the shooting and letter of representation because

---

[4] Copies of the May 22, 2018 letter and May 23, 2018 email forwarding the May 22, 2018 letter to Hamby & Alosio are attached as Exhibit E.

[5] Excerpts of cited portions of the 30(b)(6) Deposition of Waldrop Park ("WP Depo.") are attached as Exhibit F.

[6] Excerpts of the cited portions of the H&A Depo. are attached as Exhibit G.

Hamby & Aloisio was Waldrop Park's agent: "They are our agent. Our insurance agent." (WP Depo., p. 102:21-22; *accord id.* at pp. 72:9-15, 102:9-25)

Waldrop Park did not request that Hamby & Aloisio provide notice of the shooting and the May 22, 2018 letter of representation in order to comply with the notice condition of the Arch Policy, but rather, that was Waldrop Park's own procedure, which was independent of the requirements of the Arch Policy. (*Id.* at 96:11-23) At the time Waldrop Park requested that Hamby & Aloisio provide notice of the shooting, Waldrop Park's representative did not know who the insurers were, and he had not reviewed the Arch Policy to know what the reporting requirements were. (*Id.* at pp. 13:6-21, 21:2-6, 38:3-6, 57:4-14) Waldrop Park reported the shooting and letter to Hamby & Aloisio because that was its general practice, regardless of the insurer. (*Id.* at pp. 19:22-20:8, 57:15-25) The requirements of the notice condition of the Arch Policy were irrelevant, as Waldrop Park had developed its own, independent procedure for providing notice to a carrier. (*Id.* at p. 96:18-23) Waldrop Park's procedure for putting the carriers on notice was not based on the terms and conditions of the Arch Policy or on any communications or acts of Arch. (*Id.* 111:2-112:10)

Hamby & Aloisio did not provide any of the carriers with notice of the shooting or the May 22, 2018 letter, as requested by Waldrop Park. (H&A Depo., p 45:2-8, 50:3-7, 51:11-14)

On May 26, 2018, Waldrop Park's attorney followed up with Hamby & Aloisio to make sure that Waldrop Park's insurers had been provided notice of the May 22, 2018 letter of representation. (H&A Depo., p. 42:2-20 and Exhibit 7) Buddy Whitaker of Hamby & Aloisio responded, "Sorry I was out on vacation but the information was passed on to Marty and his account manager to be reported to the carriers and it looks like it was reported in Nov." (*Id*.) Even though the shooting occurred on April 12, 2018, the letter of representation was sent on May 22, 2018, and Hamby & Aloisio could not have put any insurers on notice of the shooting in November, Waldrop Park and Ardent did not respond to Mr. Whitaker to seek clarification. Instead, Waldrop Park assumed that notice of the April 12, 2018 shooting had been provided to Arch by Hamby & Aloisio. (WP Depo. at p. 41:6-22) Waldrop Park's counsel responded on June 6, 2018 and asked, "[W]hether Josh or I need to do anything at this point or will the carrier contact this firm regarding the Association's policies and limits?" (H&A Depo, p. 50:10-20 and Ex. 9) No one from Hamby & Aloisio responded to Waldrop Park's counsel, and Waldrop Park never

received any acknowledgment from Arch of the purported notice. (*Id.* at p. 51:11-14)

Hamby & Aloisio first provided notice of the shooting to AmWins Access Insurance Services, LLC ("AmWins"), a retail broker who forwarded the notice to Arch, on October 28, 2019. (*Id*. at p. 59:6-11)

On October 28, 2019, Arch first received notice of the shooting when it received an Accord Notice of Loss dated October 28, 2019 and an October 21, 2019 letter of representation from the Gilstraps' counsel. (Arch's Objections and Responses to Defendant Waldrop Park Condominium Association, Inc.'s First Interrogatories, No. 7)[7] Arch promptly issued a letter acknowledging receipt of the notice on October 29, 2019 and requesting information. (*Id*.) Josh Morton of Ardent responded to Arch in an October 29, 2019 email and stated, "This is the first we are hearing of this incident within the community[,]" which was patently false.

Arch issued reservation of rights letters to Waldrop Park and Ardent on December 9, 2019.[8] (Ardent's Responses to Arch's RFAs, Response No. 31 and Ex. F; WP's Responses to Arch's RFAs, Response Nos. 28 and Ex. F) The December 9,

---

[7] A copy of Arch's Objections and Responses to Defendant Waldrop Park Condominium Association, Inc.'s First Interrogatories is attached as Exhibit H.

[8] Copies of the December 9, 2019 reservation of rights letters are attached as Exhibit I.

2019 reservation of rights letters specifically reserved on the notice condition of the Arch Policy. (*Id*.)

After the Gilstraps filed the Underlying Lawsuit on March 13, 2020, Arch issued April 3, 2020 reservation of rights letters to Waldrop Park and Ardent.[9] (Ardent's Responses to Arch's RFAs, Response No. 34 and Ex. H; WP's Responses to Arch's RFAs, Response Nos. 30 and Ex. H) Arch again reserved on the notice condition. (*Id*.) It also reserved on the Punitive Damages Exclusion Endorsement. (*Id*.) Arch undertook the defense of Waldrop Park and Ardent subject to its reservation of rights. (*Id*.)

**D. Hamby & Aloisio.**

Hamby & Aloisio is an independent insurance agent. (H&A Depo., pp. 61:25-62:2) Hamby & Aloisio is not an agent of Arch, and it is not authorized to act on behalf of Arch. (*Id*. at p. 23:16-25)  Hamby & Aloisio does not have a contractual relationship with Arch. (*Id*. at p. 17:6-9) Hamby & Aloisio's employees do not represent to their clients, the insureds, that Hamby & Aloisio is authorized to accept notice of an occurrence or claim on behalf of Arch. (*Id*. at pp. 24:1-16, 25:3-10)

---

[9] Copies of the April 3, 2020 reservation of rights letters are attached as Exhibit J.

To procure the Arch Policy, Hamby & Aloisio submitted an application on behalf of Waldrop Park to AmWins, who obtained quotes from multiple insurers. (*Id*. at p. 18:14-21) Arch did not pay Hamby & Aloisio; rather, AmWins paid it. (*Id*. at pp. 16:9-17, 195:9-25) Hamby & Aloisio collected the premium from Waldrop Park on behalf of AmWins and forwarded the premium to AmWins, less its agreed upon compensation. (*Id*. at pp. 19:3-6, 20:13-21, 22:12-23:7, 195:16-23)

When Hamby & Aloisio delivers a policy of insurance to a client, the agent delivering the policy highlights the notice conditions of the policy so that the client is aware of how to provide notice of an occurrence or claim. (*Id*. at p. 26:12-27:17) Hamby & Alosio does not instruct its clients to provide notices of claims or occurrences to Hamby & Aloisio. (*Id*. at pp. 26:23-27:1) When a client asks Hamby & Aloisio to provide notice of an occurrence or claim, it does so as part of the services it provides to its clients. In cases where a broker is involved, like the Arch Policy, it provides the notice to the broker, as it has never provided notice directly to Arch. (*Id*. at pp. 193:22-194:2)

### III. <u>Argument and Citations to Authority</u>

#### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue of material fact, and the moving party

is entitled to judgment as a matter of law. *Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1992)).

### B. Waldrop Park and Ardent forfeited coverage under the Arch Policy by failing to provide notice of the shooting "as soon as practicable."

Under Georgia law, notice requirements such as the one in the Arch Policy are condition precedents. *See Federated Mut. Ins. Co. v. Ownbey Enterprises*, 278 Ga.App. 1, 3, 627 S.E. 917 (2006). They are valid and must be complied with for an insurer to be obligated to provide either defense or indemnity. *Id*. The notice condition of the Arch Policy is a condition precedent, as the policy also contains the "Legal Action Against Us" condition, which states, "No person or organization has a right under this Coverage Part…to sue us on this Coverage Part unless all of its terms have been fully complied with." *Progressive Mountain Ins. Co. v. Bishop*, 338 Ga.App. 115, 118, 790 S.E.2d 91 (2016); *accord State Farm Fire & Cas. Co. v. LeBlanc*, 494 F.App'x 17, 21 (11th Cir. 2012) ("[T]he notice provisions appear under sections entitled, 'General Conditions,' and a subsection entitled, 'Duties in the Event of ... Claim or Suit.' This language clearly expresses the intention that the notice provisions be treated as conditions precedent to coverage."); *Lankford v. State Farm Mut. Auto. Ins. Co.*, 307 Ga.App. 12, 703 S.E.2d 436 (2010) (policy "required notice as a condition precedent to recovery of insurance benefits" where it said "there

is no right of action against [the insurer] until all the terms of this policy have been met").

1. <u>Waldrop Park and Ardent failed to comply with the notice condition of the Arch Policy requiring notice of the shooting "as soon as practicable."</u>

As a condition precedent to coverage, General Condition 2. of the Arch Policy requires the insured to provide notice "as soon as practicable of an 'occurrence'…which may result in a claim." When a policy requires that the insured provide notice "as soon as practicable," the insured is required to provide notice "immediately." *See LeBlanc*, 494 F. App'x at 22 ("Georgia precedent shows that 'prompt' has the same meaning as terms like 'as soon as practicable' and 'immediate'"); *Advocate Networks, LLC v. Hartford Fire Ins. Co.*, 296 Ga.App. 338, 341, 674 S.E.2d 617 (2009).

Under Georgia law, the issue of whether notice is timely is usually a question of fact for a jury to resolve, but "an unexcused significant delay may be unreasonable as a matter of law." *Canadyne-Georgia Corp. v. Continental Ins. Co.*, 999 F.2d 1547, 1555 (11th Cir. 1993) (quoting Townsend *v. National Union Fire Ins. Co.*, 196 Ga.App. 789, 397 S.E.2d 61, 62 (1990)). "Absent some justification, failure to provide timely notice of an occurrence can defeat coverage under such a policy[.]" *Kay-Lex Co. v. Essex Ins. Co.*, 286 Ga.App. 484, 488, 649 S.E.2d 602 (2007); *accord Federated Mut. Ins. Co. v. Ownbey Enterprises*, 278 Ga. App. 1, 3, 627 S.E.2d 917

(2006) ("Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, ... then the insurer is not obligated to provide either a defense or coverage."). Georgia courts have repeatedly held that where the insured provides no valid excuse for its failure to provide notice for a period of as little as four months, the failure to provide notice is unreasonable as a matter of law. *See Kay-Lex Co. v. Essex Ins. Co.*, supra (one year delay); *Townsend*, supra (seven month delay); *EVI Equipment, Inc. v. Northern Ins. Co.*, 188 Ga.App. 818, 374 S.E.2d 788 (1988) (eleven month delay); *Dillard v. Allstate Ins. Co.,* 145 Ga.App. 755, 245 S.E.2d 30 (1978) (eight month delay); *Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.*, 132 Ga.App. 714, 209 S.E.2d 6 (1979) (four month delay); *Auto-Owners Ins. Co. v. Bailey*, 378 F.Supp.3d 1213 (M.D.Ga. 2019) (five month delay); *Travelers Indem. Co. of Connecticut v. Douglasville Development, LLC*, No. 1:07–CV–0410–JOF, 2008 WL 437204 (N.D.Ga. Sept. 19, 2008) (over four month delay); *Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins.*, 652 F.Supp. 851 (N.D.Ga. 1986) (ten month delay).

Here, it is undisputed that at the latest, Waldrop Park and Ardent had notice of the April 12, 2018 shooting on May 22, 2018. It is undisputed that Waldrop Park believed that the April 12, 2018 shooting was likely to result in a claim, as evidenced by its May 23, 2019 email to Hamby & Aloisio: "My thoughts are for you to notify

the Association's respective insurers and lets see if any (general liability is my thought) want to respond regarding the insurance coverage, etc." Despite knowledge of the shooting and knowledge that it would likely result in a claim or lawsuit, it is undisputed that neither Waldrop Park nor Ardent provided notice of the shooting until October 2019—**seventeen (17) months after they first had notice of the shooting**. Because Waldrop Park and Ardent failed to provide notice of the shooting to Arch until seventeen (17) months later, they failed to give notice of the "occurrence" "as soon as practicable" as a matter of law.

2. <u>Waldrop Park and Ardent cannot establish a legally sufficient excuse for the failure to comply with the notice condition of the Arch Policy, which resulted in a seventeen (17) month delay in providing notice of the shooting to Arch.</u>

When notice is a condition precedent to coverage, the questions are whether the insured complied with the notice condition and, if not, whether it had a legally sufficient excuse for its failure to comply. This standard was recently confirmed by the Eleventh Circuit:

> When it comes to an insured's adherence to notice provisions, Georgia case law is quite settled. Insurance companies aren't obligated to defend an insured or provide coverage if the insured unreasonably failed to comply with a conditional notice requirement. [] However, if an insured can show that its failure to comply with a notice requirement was justified, Georgia law will obligate insurance companies to provide a defense or coverage.

*Mt. Hawley Ins. Co. v. East Perimeter Pointe Apartments*, 861 Fed.Appx. 270, 277-78 (11th Cir. 2021) (citing *Forshee v. Emps. Mut. Cas. Co.*, 309 Ga.App. 621 (2011)); *accord Lankford,* supra. "Moreover, there is no need for an insurer to prove it was prejudiced by an insured's failure to give notice." *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga.App. 215, 221, 231 S.E.2d 245 (1976).

Whether an insured's excuse is legally sufficient is determined under an objective standard from the perspective of an ordinary policyholder. *Am. Ins. Co. v. Evercare Co.*, 699 F.Supp.2d 1361, 1366-67 (N.D. Ga. 2010)).

> "[I]f an ordinarily prudent person acting reasonably would not conclude that an incident would give rise to a possible claim, a court can determine as a matter of law that the insured was justified in not notifying the insurer of the incident." *State Farm Fire & Cas. Co. v. Walnut Ave. Partners*, L.L.C, 296 Ga. App. 648, 651, 675 S.E.2d 534, 538 (2009).
>
> ...
>
> But it is well-established that an insured "cannot avoid the requirement of prompt notice by claiming that it believed it was not liable." *Am. Ins. Co.*, 699 F.Supp.2d at 1366 (internal quotation marks and citation omitted). "The law requires more than just ignorance, or even misplaced confidence, to avoid the terms of a valid contract." *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316, 562 S.E.2d 267, 268 (2002). As such, numerous courts have concluded that such excuses are unreasonable as a matter of law. *See, e.g., Ill. Union Ins. Co. v. NRI Constr.*, 846 F. Supp. 2d 1366, 1372 (N.D. Ga. 2012) ("A valid excuse for failure to provide notice does not include the insured's conclusion

that it was free of fault and that there was no liability to the other party. That is the very issue which the company must have reasonable opportunity to investigate with promptness, and which requires a prompt notice of the occurrence."); *Am. Ins. Co.*, 699 F.Supp.2d at 1366-67 (finding insured's explanation that it was unaware the claims fell within the coverage period unreasonable as a matter of law where it was undisputed that insured was notified of circumstances of claim and should have known such claims may fall under the policy); *Brit UW Ltd.*, 6 F. Supp. 3d at 1321, 1329-30 (N.D. Ga. 2014) (finding that insured's failure to notify its insurer of accident until the underlying complaint was filed barred coverage under the insurance policy because policy language requiring notice of any occurrence that "may result in a claim" precluded an insured from withholding notice based on its own assessment of the liability issues); *Richmond*, 140 Ga. App. at 220-22, 231 S.E.2d at 249-50 (concluding that an eight-month delay was unreasonable as a matter of law because the insured knew of the occurrence and delayed simply because the insured concluded that he was without fault).

*Id.*

It is undisputed that Waldrop Park and Ardent knew about the shooting when they received the May 22, 2018 letter. Furthermore, Waldrop Park admitted that it believed a potential claim existed: "Any time I see a letter from a law firm like the Cochran law firm, I'm going to think there may be a potential claim, as Waldrop's representative. Hence, I send it to the insurance agent." (WP Depo, p. 100:6-10)

Thus, it is expected that Waldrop Park and Ardent will argue that they relied on Hamby & Aloisio to provide notice to Arch.

In *Kay-Lex*, supra, the Georgia Court of Appeals addressed the question of whether relying on one's insurance agent to provide notice to an insurer is a valid excuse for failing to provide notice "as soon as practicable." The court held that such reliance did not provide a reasonable excuse for the insured's failure to provide notice as required by the policy. 286 Ga.App. at 490.

The underlying claim in *Kay-Lex* arose out of an accident at a warehouse operated by the insured when a teenager was killed while operating a forklift. *Id*. at 485-486. On the day of the accident, the insured had provided notice of the accident to its insurance agent, and the agent stated that he would take care of it. *Id*. at 487. The agent did not provide notice of the accident to the CGL carrier. The first notice of the accident that the insurer received was a year later when it received a demand from counsel representing the deceased and his family. *Id*.

Like the Arch Policy, the CGL policy in *Kay-Lex* required the insured to provide the insurer notice "as soon as practicable of an 'occurrence'"…which may result in a claim." *Id*. at 488. The policy also defined "we" to mean "the company providing this insurance." *Id*.

The court rejected the insured's argument that notice to its agent and the agent's statement that he would take care of it created a genuine issue of material fact as to whether the insurer received timely notice. The court found that the policy clearly required that notice be provided to the insurer. *Id*. at 489. Nothing in the policy suggested that the notice condition could be satisfied by giving notice to the insured's insurance agent, and there was no evidence that the insurance agent was an agent of the insurer. *Id*. at 490; *accord Auto-Owners Ins. Co. v. Xytex Tissue Services LLC,* 421 F.Supp.3d 1369 (S.D.Ga. 2019) (finding that there was no apparent authority granted to the insurance agent with respect to the notice condition); *Jenkins v. CLJ Healthcare, LLC*, 481 F.Supp.3d 1313 (S.D.Ga. 2020).

The court in *Kay-Lex* noted that independent insurance agents are generally considered the agent of the insured. *Id*. (quoting *Southeastern Express Systems v. Southern Guaranty Ins. Co. of Ga*., 224 Ga.App. 697, 700, 482 S.E.2d 433 (1997)). The court found that there was no evidence that the insurance agent had apparent authority to receive notice on behalf of the insurer because "'neither the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer.'" *Id*. The court further found that there was no evidence that the insured

relied on anything in the policy to conclude that the insurance agent was the agent of the insurer. *Id*. at 90.

There is no evidence supporting the contention that Hamby & Aloisio had apparent authority to accept notice on behalf of Arch. As in *Kay-Lex*, the notice condition of the Arch Policy states, "You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim." The Arch Policy defines "We" as "the company providing this insurance," which is Arch. Nothing in the notice condition supports the conclusion that the notice condition could be satisfied by Waldrop Park and Ardent providing notice to Hamby & Aloisio, Waldrop Park's insurance agent. Hamby & Aloisio is not listed anywhere on the Arch Policy. In case there were any doubt as to who notice should be provided, the Claims Handling Procedures endorsement provides clear instructions: "Notices of each incident, claim or suit must be sent immediately to: Arch Specialty Insurance Company…E-mail: Claims@ArchInsurance.com[.]" Furthermore, when delivering a policy, Hamby & Aloisio highlights the notice requirements of the policy. Any argument that Waldrop Park and Ardent satisfied the notice condition of the Arch Policy by providing notice to Hamby & Aloisio fails as a matter of law.

As a matter of law, Waldrop Park and Ardent cannot establish that they provided notice "as soon as practicable" or that they had a reasonable excuse for violating the notice condition of the Arch Policy by failing to provide notice of the shooting seventeen months after they had knowledge of the shooting.

### C. In the alternative, the Punitive Damages Exclusion Endorsement precludes coverage for any award of punitive damages.

The Punitive Damages Exclusion Endorsement of the Arch Policy amends exclusions applicable to the Coverage A – Bodily Injury and Property Damage Liability to include the following exclusion: "This insurance does not apply to any claim, 'suit', demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages." If it is determined that Arch has an obligation to defend Waldrop Park and Ardent, then the Punitive Damages Exclusion Endorsement precludes any indemnity coverage under the Arch Policy for any award of punitive damages against Waldrop Park or Ardent.

Courts applying Georgia law have found that exclusions that foreclose coverage for punitive damages are enforceable. *See Southern v. Sphere-Drake Ins. Co., Inc.*, 226 Ga.App. 450, 486 S.E.2d 674 (1997) (holding that punitive damages exclusion foreclosed coverage for alleged damages); *Nautilus Ins. Co. v. Headhunters Racerack, LLC*, 2016 WL 1270273 (M.D.Ga. Mar. 31, 2016) (finding that punitive damages exclusion was not against public policy and

insured had no duty to indemnify insureds for any punitive damages awarded in the underling actions.

In the Underlying Lawsuit, the Gilstraps seek an award of punitive damages. The Punitive Damages Endorsement Exclusion clearly and unambiguously states that the Arch Policy does not provide coverage for "any 'suit', demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages." In the event that it is determined that Arch has a duty to defend, it is entitled to a declaration that any award of punitive damages against Waldrop Park or Ardent is excluded from coverage under the Arch Policy by the Punitive Damages Exclusion Endorsement.

## IV.   <u>Conclusion</u>

Based on the forgoing, the notice condition of the Arch Policy is a condition precedent to coverage, and Waldrop Park and Ardent failed to comply with the notice condition as a matter of law because they failed to provide Arch notice of the April 12, 2018 shooting after receipt of the May 22, 2018 letter of representation for over seventeen (17) months. Waldrop Park and Ardent have failed to provide a legally sufficient excuse for their failure to comply with the notice condition of the Arch Policy. Thus, Arch respectfully requests that the Court grant its motion for summary judgment finding that Waldrop Park and

Ardent forfeited coverage under the Arch Policy by failing to comply with the notice condition of the Policy.

In the alternative, if the Court finds that a question of fact exists as to whether Waldrop Park and Ardent forfeited coverage, Arch respectfully requests that the Court grant Arch summary judgment on the applicability of the Punitive Damages Exclusion, finding that the Arch Policy does not provide coverage for punitive damages sought by the Gilstraps in the Underlying Complaint.

Respectfully submitted this 29th day of March, 2022.

HALL BOOTH SMITH, P.C.

/s/ Thomas K. Wingfield
C. Michael Johnson
Georgia Bar No. 392550
Thomas K. Wingfield
Georgia Bar No. 770653
mjohnson@hallboothsmith.com
twingfield@hallboothsmith.com

191 Peachtree Street N.E.
Suite 2900
Atlanta, GA 30303-1775
Telephone: (404) 954-5000
Facsimile: (404) 954-5020

*Counsel for Plaintiff Arch Specialty Insurance Company*

**Local Rule 7.1 Certification**

In accordance with Local Rule 7.1, the undersigned counsel certifies that the foregoing Memorandum of Law has been prepared using 14 point Times New Roman font as approved by Local Rule 5.1B.

*/s/Thomas K. Wingfield*
Thomas K. Wingfield
Georgia Bar No. 770653

*Counsel for Plaintiff Arch Specialty*
    *Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| STARSTONE NATIONAL | ) | |
| INSURANCE COMPANY and | ) | |
| ARCH SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-04398-JPB |
| | ) | |
| WALDROP PARK CONDOMINIUM | ) | |
| ASSOCIATION, INC., ARDENT | ) | |
| RESIDENTIAL, LLC, CURTIS | ) | |
| GILSTRAP AND JESSICA | ) | |
| GILSTRAP, | ) | |
| | ) | |
|     Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing upon all parties to this matter via the CM/ECF (Pacer) system which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Kim M. Jackson, Esq. | Keith S. Hasson, Esq. |
| J. Jackson Harris, Esq. | Michael F. O'Neill, Esq. |
| W. Randal Bryant, Esq. | **HASSON LAW GROUP, LLP** |
| **BOVIS, KYLE, BURCH & MEDLIN, LLC** | 3379 Peachtree Road NE, Suite 625 |
| 200 Ashford Center North, Suite 500 | Atlanta, GA 30326 |
| Atlanta, GA 30338 | |

| | |
|---|---|
| kjackson@boviskyle.com<br>jharris@boviskyle.com<br>rbryant@boviskyle.com<br><br>*Counsel for Plaintiff, StarStone<br>National Insurance Company* | keith@hassonlawgroup.com<br>mike@hassonlawgroup.com<br><br>*Counsel for Defendant, Waldrop Park<br>Condominium Association, Inc.* |
| James A. Rice, Jr., Esq.<br>**JAMES A. RICE, JR., P.C.**<br>563 Spring Street, NE<br>Atlanta, GA 30308<br>jim@ricefirm.com<br><br>*Counsel for Defendants, Curtis and<br>Jessica Gilstrap* | Michael B. Weinstein, Esq.<br>**WEINSTEIN & BLACK, LLC**<br>3050 Amwiler Road, Suite 200-C<br>Atlanta, GA 30360<br>Mike@wblegal.net<br><br>*Counsel for Defendant,<br>Ardent Residential, LLC* |

Respectfully submitted, this 29th day of March, 2022.

**HALL BOOTH SMITH, P.C.**

*/s/Thomas K. Wingfield*
C. Michael Johnson
Georgia Bar No. 392550
Thomas K. Wingfield
Georgia Bar No. 770653
mjohnson@hallboothsmith.com
twingfield@hallboothsmith.com

191 Peachtree Street N.E.
Suite 2900
Atlanta, GA 30303-1775
Telephone: (404) 954-5000
Facsimile: (404) 954-5020

*Counsel for Plaintiff Arch Specialty
Insurance Company*

71802031-3