# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| STARSTONE NATIONAL INSURANCE COMPANY and ARCH SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: |
| WALDROP PARK CONDOMINIUM ASSOCIATION, INC., ARDENT RESIDENTIAL, LLC, CURTIS GILSTRAP and JESSICA GILSTRAP, | ) ) ) ) ) | 1:20-cv-04398-JPB |
| Defendants. | ) ) | |

_____

<u>**DEFENDANT ARDENT RESIDENTIAL, LLC'S OBJECTIONS AND
RESPONSES TO PLAINTIFF ARCH SPECIALTY INSURANCE
COMPANY'S FIRST REQUESTS FOR ADMISSIONS**</u>

**COMES NOW,** Defendant Ardent Residential, LLC ("Defendant"), by and through counsel and in accordance with the Georgia Civil Practice Act, hereby responds and objects to Plaintiff, Arch Specialty Insurance Company's First Requests for Admissions, stating as follows:

<u>**GENERAL OBJECTIONS**</u>

1. Defendant objects to Plaintiff's Request for Admissions, to the extent they seek information or documents protected from disclosure by the attorney-client privilege, the work product doctrine, the self-critical analysis privilege, and/or any other immunity, privilege, law, or rule. Nothing contained in these responses is intended or may be construed as a waiver of the attorney-client privilege, the work product doctrine, the self-critical analysis privilege, and/or any

**Exhibit B**

other immunity, privilege, law, or rule.

2.      Defendant objects to Plaintiff's Request for Admissions to the extent that they purport to impose demands beyond those imposed by the Georgia Civil Practice Act or any other applicable rules.

3.      Defendant objects to Plaintiff's Request for Admissions to the extent that they are vague, ambiguous, overbroad, oppressive, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not described with a reasonable level of particularity, or not relevant to the claims and defenses of either party.

4.      Defendant objects to Plaintiff's Request for Admissions to the extent that the information is not within the possession, custody, or control of Defendant or its agents.

5.      Defendant objects to Plaintiff's Request for Admissions to the extent they seek confidential, proprietary, or sensitive business information, documents, or things and to the extent they seek confidential information, documents, or things about persons or entities who are not parties or witnesses.

6.      Defendant objects to Plaintiff's Request for Admissions to the extent they seek information already in Plaintiff's possession and /or readily accessible to Defendant.

7.      Defendant objects to Plaintiff's Request for Admissions to the extent they are repetitive, redundant, and intended to harass and intimidate Defendant.

Subject to these objections, which are hereby incorporated into each and every response below, and without waiver thereof, Defendant responds to Plaintiff's Request for Admissions as follows:

**Exhibit B**

## REQUEST FOR ADMISSIONS

### 1.

A true and accurate copy of the Complaint filed by Curtis Gilstrap and Jessica Gilstrap against Waldrop Park and Ardent in the Underlying Action is attached hereto as **Exhibit A**.

**RESPONSE**:

Ardent responds to Request No. 1 by stating Exhibit A speaks for itself. To the extent a further response is required, Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 1, and as a result thereof, they are denied.

### 2.

The claims asserted in the Complaint filed in the Underlying Action arise out of the shooting of Curtis Gilstrap at the Premises on or about April 12, 2018.

**RESPONSE**:

Ardent responds to Request No. 2 by stating the Complaint speaks for itself. To the extent a further response is required, Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 1, and as a result thereof, they are denied.

### 3.

Ardent Residential was the property manager of the Premises on April 12, 2018.

**RESPONSE**:

Admitted.

### 4.

Ardent Residential operated as the property manager for the Premises on April 12, 2018 under a contract with Waldrop Park.

**Exhibit B**

**RESPONSE**:

Admitted.

5.

Ardent had notice of the Shooting on or before May 1, 2018.

**RESPONSE**:

Denied.

6.

Ardent made Waldrop Park aware of the Shooting on or before May 1, 2018.

**RESPONSE**:

Denied.

7.

Ardent made Waldrop Park aware of the Shooting on or before June 1, 2018.

**RESPONSE**:

Admitted.

8.

Ardent had notice of the Shooting on or before May 22, 2018.

**RESPONSE**:

Admitted.

9.

Attached hereto as **<u>Exhibit B</u>** is a true and accurate copy of a May 22, 2018 letter from Shean D. Williams of the Cochran Firm to Josh Morton of Ardent.

**RESPONSE**:

Ardent responds to Request No. 9 by stating Exhibit B speaks for itself. To the extent a further response is required, Ardent lacks sufficient knowledge and

# Exhibit B

information to either admit or deny the allegations contained in Request No. 9, and as a result thereof, they are denied.

10.

Attached hereto as **<u>Exhibit C</u>** is a true and accurate copy of a May 22, 2018 email from Josh Morton of Ardent to G. Lanier Coulter, Jr.

**RESPONSE**:

Admitted.

11.

The May 22, 2018 email from Josh Morton to G. Lanier Coulter, Jr. included the May 22, 2018 letter from Shean D. Williams of the Cochran Firm to Josh Morton of Ardent, which is attached hereto as **<u>Exhibit B</u>**, as an attachment.

**RESPONSE**:

Admitted.

12.

G. Lanier Coulter, Jr. served as an attorney for Waldrop Park on May 22, 2018.

**RESPONSE**:

Admitted.

13.

Waldrop Park has knowledge of the May 22, 2018 letter, which is attached hereto as **<u>Exhibit B</u>**, on May 22, 2018.

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 13, and as a result thereof, they are denied.

5

**Exhibit B**

14.

Ardent received the May 22, 2018 letter, which is attached hereto as **<u>Exhibit B</u>**, on May 22, 2018.

**RESPONSE**:

Admitted.

15.

Ardent did not provide Arch notice of the Shooting until October 2019.

**RESPONSE**:

Denied.

16.

No person or entity acting on behalf of or at the direction of Ardent provided notice of the Shooting to Arch until October 2019.

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 16, and as a result thereof, they are denied.

17.

Ardent is not in possession of any communications by it or on its behalf providing notice of the Shooting to Arch prior to October 2019.

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 17, and as a result thereof, they are denied.

18.

Ardent is unaware of any communication by Waldrop Park providing notice of the Shooting to Arch prior to October 2019.

**Exhibit B**

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 18, and as a result thereof, they are denied.

19.

Ardent is unaware of any communication, whether oral, written or otherwise, providing notice of the Shooting to Arch prior to October 2019.

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 19, and as a result thereof, they are denied.

20.

Ardent did not confirm that notice of the Shooting has been provided to Arch shortly after receipt of the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **<u>Exhibit B</u>**.

**RESPONSE**:

Denied.

21.

Prior to providing notice of the Shooting to Arch in October 2019, Ardent did not confirm that Arch had been provided notice of the Shooting by anyone acting on behalf of Waldrop Park.

**RESPONSE**:

Denied.

22.

Ardent did not provide notice of the Shooting to Arch until October 2019 because it instructed some other entity or person to provide notice to Arch shortly

after receipt of the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **Exhibit B**.

**RESPONSE**:

Denied.

23.

Ardent did not confirm that some other entity or person that it instructed to provide notice of the Shooting to Arch shortly after receipt of the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **Exhibit B**, actually provided the notice of the Shooting to Arch.

**RESPONSE**:

Denied.

24.

The only reason that Ardent did not provide notice of the Shooting until October 2019 is that it believed some other person or entity had previously provided notice.

**RESPONSE**:

Denied.

25.

Attached hereto as **Exhibit D** is a true copy of the Acord Liability Notice of Occurrence/Claim, including the referenced October 21, 2019 letter from counsel for the Gilstraps, submitted on behalf of Waldrop Park to Arch.

**RESPONSE**:

Ardent responds to Request No. 25 by saying Exhibit D speaks for itself. To the extent a further response is required, Ardent lacks sufficient knowledge and information to either admit or deny the remaining allegations contained in Request No. 25, and as a result thereof, they are denied.

8

**Exhibit B**

26.

Ardent did not submit the Notice of Occurrence/Claim, which is attached hereto as **Exhibit D**, to Arch.

**RESPONSE**:

Admitted.

27.

Ardent did not provide notice of the October 21, 2019 letter from counsel for the Gilstraps that is enclosed with the Acord Liability Notice of Occurrence/Claim, which is attached hereto as **Exhibit D**, to Arch.

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 27, and as a result thereof, they are denied.

28.

The Acord Liability Notice of Occurrence/Claim, including the referenced October 21, 2019 letter from counsel for the Gilstraps, which is attached hereto as **Exhibit D**, was the first notice of the Shooting provided to Arch on behalf of Waldrop Park.

**RESPONSE**:

Ardent lacks sufficient knowledge and information to either admit or deny the allegations contained in Request No. 28, and as a result thereof, they are denied.

29.

Attached hereto as **Exhibit E** is a true and accurate copy of an October 29, 2019 letter from Arch to Waldrop Park.

**Exhibit B**

**RESPONSE**:

Ardent responds to Request No. 29 by stating Exhibit E speaks for itself. To the extent a further response is required, Ardent lacks sufficient knowledge and information to either admit or deny the remaining allegations contained in Request No. 29, and as a result thereof, they are denied.

30.

Prior to receiving the October 29, 2019 letter from Arch to Waldrop Park, which is attached hereto as **Exhibit E**, Ardent had not received any communications from Arch regarding the Shooting or any notice of the Shooting provided by or on behalf of Waldrop Park.

**RESPONSE**:

Admitted.

31.

Attached hereto as **Exhibit F** is a true and accurate copy of a December 9, 2019 letter from Arch to Waldrop Park.

**RESPONSE**:

Ardent responds to Request No. 31 by stating Exhibit F speaks for itself. To the extent an additional response is required, Ardent lacks sufficient knowledge and information to either admit or deny the remaining allegations contained in Request No. 31, and as a result thereof, they are denied.

32.

Attached hereto as **Exhibit G** is a true and accurate copy of a March 25, 2020 letter from Arch to Ardent.

**RESPONSE**:

Ardent responds to Request No. 32 by stating Exhibit G speaks for itself. To the extent an additional response is required, Ardent lacks sufficient knowledge

**Exhibit B**

and information to either admit or deny the remaining allegations contained in Request No. 32, and as a result thereof, they are denied.

33.

Attached hereto as **Exhibit H** is a true and accurate copy of an April 3, 2020 letter from Arch to Ardent.

**RESPONSE**:

Ardent responds to Request No. 33 by stating Exhibit H speaks for itself. To the extent an additional response is required, Ardent lacks sufficient knowledge and information to either admit or deny the remaining allegations contained in Request No. 33, and as a result thereof, they are denied.

34.

Ardent accepted Arch's appointment of defense counsel to defend it from the claims asserted in the Underlying Action subject to the reservation of rights set forth in the April 3, 2020 letter from Arch to Waldrop Park, which is attached hereto as **Exhibit H.**

**RESPONSE**:

Ardent responds to Request No. 34 by admitting it accepted Arch's appointment of defense counsel to defend it from the claims asserted in the Underlying Action. By way of further response, Ardent responds to Request No. 34 by stating Exhibit H speaks for itself and it lacks sufficient knowledge and information to either admit or deny the remaining allegations contained in Request No. 34, and as a result thereof, they are denied.

**Exhibit B**

Respectfully submitted this 30th day of June 2021.

**MBW LAW, LLC**

s/Michael B. Weinstein
Michael B. Weinstein
Georgia Bar No. 746386
3050 Amwiler Road, Suite 200-C
Atlanta, GA 30360
(404) 228-2629 (O)
mike@mbwlaw.net

*Attorney for Defendant Ardent Residential, LLC*

**Exhibit B**

|  |  |  |
|---|---|---|
| STARSTONE NATIONAL INSURANCE COMPANY and ARCH SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: 1:20-cv-04398-JPB |
| WALDROP PARK CONDOMINIUM ASSOCIATION, INC., ARDENT RESIDENTIAL, LLC, CURTIS GILSTRAP and JESSICA GILSTRAP, | ) ) ) ) ) | |
| Defendants. | ) ) | |

---

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a true and correct copy of **DEFENDANT'S OBJECTIONS AND RESPONSES TO PALINTIFF'S FIRST REQUESTS FOR ADMISSIONS** upon counsel of record via e-mail, addressed as follows:

Mr. Keith Hasson
Ms. Mariana Melendez
Mr. Michael F. O'Neill
Hasson Law Group, P.C.
3379 Peachtree Road, Suite 625
Atlanta, GA 30326

Mr. James A. Rice
Office of James A. Rice, Jr.
563 Spring Street
Atlanta, GA 30308

**Exhibit B**

Mr. Thomas Kearney Wingfield
Mr. Carey Michael Johnson
Hall Booth Smith, P.C.
191 Peachtree Street N. E., Suite 2900
Atlanta, GA 30303

Ms. Kim M. Jackson
Mr. Joseph Jackson Harris
Bovis, Kyle, Burch & Medlin, LLC
200 Ashford Center North
Suite 500
Atlanta, GA 30338

Respectfully submitted this 30th day of June 2021.

/s/Michael B. Weinstein
Michael B. Weinstein

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| STARSTONE NATIONAL INSURANCE COMPANY and ARCH SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:20-04398-JPB |
| WALDROP PARK CONDOMINIUM ASSOCIATION, INC., ARDENT RESIDENTIAL, LLC, CURTIS GILSTRAP AND JESSICA GILSTRAP, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF ARCH SPECIALTY INSURANCE COMPANY'S**
**FIRST SET OF REQUESTS FOR ADMISSIONS**
**DEFENDANT ARDENT RESIDENTIAL, LLC**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Arch

Specialty Insurance Company ("Arch") requests that Defendant Ardent

Residential, LLC respond to the following Requests for Admission, within the time

permitted by Rule 36.

1

**Exhibit B**

# I. Definitions

1. As used herein, "Ardent" means and refers to named defendant in the above-styled action, Ardent Residential, LLC, including its members, officers, directors, employees, representatives and agents.

2. As used herein, "Waldrop Park" means and refers to named defendant in the above-styled action, Waldrop Park Condominium Association, Inc., including its members, officers, directors, employees, representatives and agents.

3. As used herein, the "Gilstraps" means and refers to named defendants in the above-styled action, Curtis and Jessica Gilstrap.

4. As used herein, "Arch" means and refers to named plaintiff in the above-styled action, Arch Specialty Insurance Company, including its members, officers, directors, employees, representatives and agents.

5. As used herein, "StarStone" means and refers to named plaintiff in the above-styled action, StarStone National Insurance Company, including its members, officers, directors, employees, representatives and agents.

6. As used herein, the "Premises" means and refers to the condominium complex known as Waldrop Park located at 11101 Waldrop Place, Decatur, Georgia 30034.

**Exhibit B**

7.     As used herein, the "Underlying Action" means and refers to the lawsuit captioned *Curtis Gilstrap and Jessica Gilstrap v. Waldrop Park Condominium Association, Inc. and Ardent Residential, LLC,* Case No. 20A796753, which was filed on or about March 13, 2020 in the State Court of DeKalb County, Georgia.

8.     As used herein, the "Shooting" means and refers the shooting of Mr. Gilstrap at which occurred on or about April 12, 2018 out of which the claims asserted by the Gilstraps in the Underlying Action arise.

## II.     **Requests to Admit**

Admit or deny the following:

**REQUEST NO. 1:**     A true and accurate copy of the Complaint filed by Curtis Gilstrap and Jessica Gilstrap against Waldrop Park and Ardent in the Underlying Action is attached hereto as **Exhibit A**.

**Response:**


**REQUEST NO. 2:**     The claims asserted in the Complaint filed in the Underlying Action arise out of the shooting of Curtis Gilstrap at the Premises on or about April 12, 2018.

**Exhibit B**

**Response:**


**REQUEST NO. 3:** Ardent Residential was the property manager of the Premises on April 12, 2018.

**Response:**


**REQUEST NO. 4:** Ardent Residential operated as the property manager for the Premises on April 12, 2018 under a contract with Waldrop Park.

**Response:**


**REQUEST NO. 5:** Ardent had notice of the Shooting on or before May 1, 2018.

**Response:**


**REQUEST NO. 6:** Ardent made Waldrop Park aware of the Shooting on or before May 1, 2018.

**Response:**

**Exhibit B**

**REQUEST NO. 7:**    Ardent made Waldrop Park aware of the Shooting on or before June 1, 2018.

**Response:**


**REQUEST NO. 8:**    Ardent had notice of the Shooting on or before May 22, 2018.

**Response:**


**REQUEST NO. 9:**    Attached hereto as **<u>Exhibit B</u>** is a true and accurate copy of a May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent.

**Response:**


**REQUEST NO. 10:**    Attached hereto as **<u>Exhibit C</u>** is a true and accurate copy of a May 22, 2018 email from Josh Morton of Ardent to G. Lanier Coulter, Jr.

**Response:**

**Exhibit B**

**REQUEST NO. 11:** The May 22, 2018 email from Josh Morton of Ardent to G. Lanier Coulter, Jr. included the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **Exhibit B**, as an attachment.

**Response:**

**REQUEST NO. 12:** G. Lanier Coulter, Jr. served as an attorney for Waldrop Park on May 22, 2018.

**Response:**

**REQUEST NO. 13:** Waldrop Park had knowledge of the May 22, 2018 letter, which is attached hereto as **Exhibit B**, on May 22, 2018.

**Response:**

**REQUEST NO. 14:** Ardent received the May 22, 2018 letter, which is attached hereto as **Exhibit B**, on May 22, 2018.

**Response:**

**Exhibit B**

**REQUEST NO. 15:** Ardent did not provide Arch notice of the Shooting until October 2019.

**Response:**

**REQUEST NO. 16:** No person or entity acting on behalf of or at the direction of Ardent provided notice of the Shooting to Arch until October 2019.

**Response:**

**REQUEST NO. 17:** Ardent is not in possession of any communications by it or on its behalf providing notice of the Shooting to Arch prior to October 2019.

**Response:**

**REQUEST NO. 18:** Ardent is unaware of any communication by Waldrop Park providing notice of the Shooting to Arch prior to October 2019.

**Response:**

**Exhibit B**

**REQUEST NO. 19:** Ardent is unaware of any communication, whether oral, written or otherwise, providing notice of the Shooting to Arch prior to October 2019.

**Response:**

**REQUEST NO. 20:** Ardent did not confirm that notice of the Shooting had been provided to Arch shortly after receipt of the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **Exhibit B**.

**Response:**

**REQUEST NO. 21:** Prior to providing notice of the Shooting to Arch in October 2019, Ardent did not confirm that Arch had been provided notice of the Shooting by anyone acting on behalf of Waldrop Park.

**Response:**

**REQUEST NO. 22:** Ardent did not provide notice of the Shooting to Arch until October 2019 because it instructed some other entity or person to provide

**Exhibit B**

notice to Arch shortly after receipt of the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **Exhibit B**.

**Response:**

**REQUEST NO. 23:** Ardent did not confirm that some other entity or person that it instructed to provide notice of the Shooting to Arch shortly after receipt of the May 22, 2018 letter from Shean D. Williams of The Cochran Firm to Josh Morton of Ardent, which is attached hereto as **Exhibit B**, actually provided notice of the Shooting to Arch.

**Response:**

**REQUEST NO. 24:** The only reason that Ardent did not provide notice of the Shooting until October 2019 is that it believed some other person or entity had previously provided notice.

**Response:**

**Exhibit B**

**REQUEST NO. 25:** Attached hereto as **Exhibit D** is a true and accurate copy of the Acord Liability Notice of Occurrence/Claim, including the referenced October 21, 2019 letter from counsel for the Gilstraps, submitted on behalf of Waldrop Park to Arch.

**Response:**


**REQUEST NO. 26:** Ardent did not submit the Notice of Occurrence/Claim, which is attached hereto as **Exhibit D**, to Arch.

**Response:**


**REQUEST NO. 27:** Ardent did not provide notice of the October 21, 2019 letter from counsel for the Gilstraps that is enclosed with the Acord Liability Notice of Occurrence/Claim, which is attached hereto as **Exhibit D**, to Arch.

**Response:**


**REQUEST NO. 28:** The Acord Liability Notice of Occurrence/Claim, including the referenced October 21, 2019 letter from counsel for the Gilstraps,

**Exhibit B**

which is attached hereto as **Exhibit D**, was the first notice of the Shooting provided to Arch on behalf of Waldrop Park.

**Response:**

**REQUEST NO. 29:** Attached hereto as **Exhibit E** is a true and accurate copy of an October 29, 2019 letter from Arch to Waldrop Park.

**Response:**

**REQUEST NO. 30:** Prior to receiving the October 29, 2019 letter from Arch to Waldrop Park, which is attached hereto as **Exhibit E**, Ardent had not received any communications from Arch regarding the Shooting or any notice of the Shooting provided by or on behalf of Waldrop Park.

**Response:**

**REQUEST NO. 31:** Attached hereto as **Exhibit F** is a true and accurate copy of a December 9, 2019 letter from Arch to Waldrop Park.

**Response:**

**Exhibit B**

**Response:**


**REQUEST NO. 32:** Attached hereto as **Exhibit G** is a true and accurate copy of a March 25, 2020 letter from Arch to Ardent.

**Response:**


**REQUEST NO. 33:** Attached hereto as **Exhibit H** is a true and accurate copy of an April 3, 2020 letter from Arch to Ardent.

**Response:**


**REQUEST NO. 34:** Ardent accepted Arch's appointment of defense counsel to defend it from the claims asserted in the Underlying Action subject to the reservation of rights set forth in the April 3, 2020 letter from Arch to Waldrop Park, which is attached hereto as **Exhibit H**.

**Response:**


*[Signature On Next Page]*

**Exhibit B**

Respectfully submitted, this 21st day of May, 2021.

HALL BOOTH SMITH, P.C.

C. Michael Johnson, Esq.
Georgia Bar No. 392550
mjohnson@hallboothsmith.com
191 Peachtree Street NE, Suite 2900     Thomas Wingfield, Esq.
Atlanta, Georgia 30303-1775     Georgia Bar No. 770653
Telephone:  (404) 954-5000     twingfield@hallboothsmith.com
Facsimile:   (404) 954-5020

*Counsel for Plaintiff, Arch Specialty*
*Insurance Company*

70413431-2
12770-0004

13

**Exhibit B**

# EXHIBIT "A"

Exhibit B

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

CURTIS GILSTRAP and           )
JESSICA GILSTRAP,             )
                              )
        Plaintiffs,           )
                              )       CIVIL ACTION FILE NO.
v.                            )       20A79653
                              )       _____
WALDROP PARK CONDOMINIUM      )
ASSOCIATION, INC., and        )
ARDENT RESIDENTIAL LLC,       )
                              )
        Defendants.           )

## **COMPLAINT**

COME NOW Plaintiffs in the above-styled action, and hereby files this Complaint for

Damages against the above-named Defendants as follows:

1.

Defendant Waldrop Park Condominium Association, Inc. (hereinafter "Defendant

Waldrop Park Condominium Association" and/or "Defendants") is a domestic nonprofit

corporation whose registered agent is Caroline Simmons. Defendant may be served though its

registered agent Caroline Simmons, 4024 Moore Creek Drive, Conley, DeKalb County, Georgia

30288.

2.

Service and service of process is proper as to Defendant Waldrop Park Condominium

Association, Inc.

3.

Jurisdiction is proper as to Defendant Waldrop Park Condominium Association, Inc.

Copy from re:SearchGA

STATE COURT OF
DEKALB COUNTY, GA.
3/13/2020 11:27 AM
E-FILED
BY: Monica Gay

**Exhibit B**

4.

Venue is proper as to Defendant Waldrop Park Condominium Association, Inc.

5.

Defendant Ardent Residential LLC (hereinafter "Defendant Ardent Residential" and/or "Defendants") is a domestic limited liability company whose registered agent is Susan T. Grissom. Defendant may be served though its registered agent Susan T. Grissom, Grissom Law, LLC, 10475 Medlock Bridge Road, Suite 215, Johns Creek, Fulton County, Georgia 30097.

6.

Service and service of process is proper as to Defendant Ardent Residential LLC.

7.

Jurisdiction is proper as to Defendant Ardent Residential LLC.

8.

Venue is proper as to Defendant Ardent Residential LLC.

9.

The tort at issue occurred in DeKalb County such that venue is proper pursuant to Georgia law.

10.

At all times mentioned herein, Defendants owned, operated, controlled, and/or managed the complex known as Waldrop Park located in DeKalb County at 11101 Waldrop Place, Decatur, Georgia 30034 (hereinafter "the Premises").

11.

On April 12, 2018, Plaintiff Curtis Gilstrap (hereinafter "Plaintiff") was an invitee at the subject complex known as Waldrop Park, located at 11101 Waldrop Place, Decatur, Georgia

EXHIBIT "A" - Page 2

Copy from re:SearchGA

**Exhibit B**

30034 (hereinafter "the Waldrop Park Premises").

12.

The incident at issue occurred in DeKalb County.

13.

On April 12, 2018, Defendant Waldrop Park Condominium Association had an office and conducted business in DeKalb County.

14.

On April 12, 2018, Defendant Ardent Residential had an office and conducted business in DeKalb County.

15.

On April 12, 2018, Plaintiff was an invitee in the Waldrop Park Premises owned and/or operated and/or managed by the Defendants. At said time and place, Plaintiff was assaulted and shot at the Premises located in DeKalb County causing serious and permanent injuries.

16.

Plaintiff exercised ordinary care and diligence at all times herein and under the circumstances then existing.

17.

Defendants breached their duty owed to Plaintiff by failing to exercise ordinary care to keep their premises safe.

18.

Prior to and on April 12, 2018, the Premises was negligently maintained, inspected, secured, patrolled, and managed by Defendants. Defendants had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol, and manage said premises,

Copy from re:SearchGA

**Exhibit B**

but failed to exercise ordinary care. Further, Defendants failed to maintain the Premises in a safe condition free of hazards or to warn of those hazards.

19.

Defendants had actual and constructive knowledge of criminal activity existing on their premises prior to the incident involving Plaintiff. Said prior criminal activity was negligently permitted to exist and remain on said premises.

20.

Defendants had actual and constructive knowledge of criminal activity existing at their premises and in the neighborhood prior to the attack on Plaintiff and others, but negligently failed to warn Plaintiff.

21.

Defendants negligently failed to warn their invitees, including Plaintiff, of the existence of the aforementioned criminal activity and the likelihood of further criminal attacks.

22.

Defendants negligently failed to maintain adequate security devices to prohibit improper use of or access to the both premises, thereby causing an unreasonable risk of injury to their invitees, including Plaintiff.

23.

At all times mentioned herein, Defendants controlled the management of the properties at issue and had the legal duty to keep both premises in a state consistent with the due regard for the safety of their residents and invitees, including Plaintiff. Defendants breached said duties to Plaintiff and failed to act as similarly situated businesses in like circumstances.

Copy from re:SearchGA

**Exhibit B**

24.

Defendants were negligent in failing to maintain, inspect, secure, patrol, and manage the premises at issue, thereby creating an unreasonable risk of injury to their invitees, including Plaintiff.

25.

Defendants knew of, or with the exercise of due care for the safety of their invitees should have known of, the dangerous and hazardous conditions existing on both premises and that failure to maintain, inspect, secure, patrol, and manage the premises would likely result in the injuries suffered by Plaintiff.

26.

Defendants were and are *negligent per se*.

27.

The Defendants were negligent and said negligence proximately caused Plaintiff's injuries in the following ways, to wit:

a)   Violation of O.C.G.A. § 51-3-1 by failing to use ordinary care to keep the premises safe;

b)   Violation of O.C.G.A. § 44-7-13;

c)   In failing to properly inspect and maintain the premises;

d)   In failing to warn of the latent dangers on the premises;

e)   Failure to properly train and supervise its employees in regard to the maintenance and safety of said premises; and

f)   Failure in property retaining, entrusting, hiring, training and supervising said employees.

Copy from re:SearchGA

**Exhibit B**

28.

Defendants had actual knowledge of the dangerous and hazardous conditions existing at the premises due to the direct knowledge of their employees and agents.

29.

Defendants had constructive knowledge of the dangerous and hazardous conditions existing on the premises through the knowledge of their employees and agents and due to the prior criminal activity and dangers associated with the property and surrounding areas.

30.

Defendants negligently failed to maintain a policy, procedure, or system of investigating, reporting, and warning of the aforementioned criminal activity and negligently maintained property.

31.

Defendants are jointly and severally liable for the injuries suffered by Plaintiff. Said injuries of Plaintiff were done without necessity, privilege, or consent.

32.

Because Defendants had knowledge of, or in the exercise of reasonable care, should have had knowledge of the dangerous environment of said property, Defendants are liable for the negligent supervision, hiring, training, and retention of their employees and the entrustment of said property to their agents and employees. Said negligence was proximate cause of the damages and injuries to Plaintiff.

33.

Defendants negligently represented to their invitees and residents that the property at issue was properly maintained.

Copy from re:SearchGA

**Exhibit B**

34.

Defendants negligently failed to provide adequate security protection, security personnel, or an outside security presence on the property.

35.

Defendants negligently failed to act on their knowledge of prior crimes, and failed to act to correct, deter, or warn of prior criminal activity, loitering, trespassing, and the dangerous environment of said property.

36.

Defendants failed to take appropriate action to remedy or reduce the danger to their invitees, including Plaintiff, and allowed the dangerous environment on the subject property to continue to exist unabated, thereby creating a nuisance.

37.

The injuries suffered by Plaintiff as described herein are continuing and permanent in nature.

38.

Defendants' negligence was a cause in fact and a proximate cause of Plaintiff's injuries.

39.

Defendants are liable for Plaintiff's injuries sustained, pain and suffering, and all other elements of damages allowed under the laws of the State of Georgia. Defendants are liable to Plaintiff directly, as well as under theories of respondeat superior and agency principles.

40.

As a proximate and foreseeable result of the negligence of Defendants, Plaintiff received serious injuries, endured pain and suffering, mental anguish, and suffered other damages as will

Copy from re:SearchGA

**Exhibit B**

be proven at trial and permitted under Georgia law. Plaintiff states his intention to seek all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia Law, including, but not limited to:

a)   Personal injuries;

b)   Past, present, and future pain and suffering;

c)   Disability;

d)   Disfigurement;

e)   Mental anguish;

f)    Economic losses;

g)   Loss of the capacity for the enjoyment of life;

h)   Incidental expenses;

i)    Past, present, and future medical expenses;

j)    Past, present, and future lost wages;

k)   Permanent injuries; and

l)    Consequential damages to be proven at trial.

41.

That each of the forgoing acts and omissions constitute an independent act of negligence on the part of Defendants and one or more or all of the above stated acts were the proximate causes of the injuries to Plaintiff. Defendants are jointly and severally liable for the injuries to Plaintiff and all damages recoverable under Georgia law.

42.

Defendants' actions were willful and wanton and showed an entire want of care, raising the presumption of conscious indifference to the consequences. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants in accordance with the enlightened conscience of

Copy from re:SearchGA

**Exhibit B**

an impartial jury pursuant to O.C.G.A. § 51-12-5.1.

43.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover his necessary expenses of litigation, including an award of reasonable attorney's fees and expenses required by this action, pursuant to O.C.G.A. § 13-6-11, as well as any other statutory or common law basis.

44.

Prior to April 12, 2018, Defendants created a nuisance at their respective premises.

45.

Prior to April 12, 2018, Defendants knew or should have known that a combination of one or more of the security failures as it relates to security guards, courtesy officers, lighting, and the failure to enforce lease and policy provisions would both attract criminals and fail to deter criminals to the Premises.

46.

Prior to April 12, 2018, Defendants created an ongoing nuisance at their respective premises prior to April 12, 2018 which continued through and until Plaintiff's injuries at the Premises.

WHEREFORE, the Plaintiffs pray that:

(a) Process issue as provided by law;

(b) Plaintiffs be awarded actual damages in amounts to be shown at trial from the Defendants;

(c) Plaintiffs be awarded all general, special, compensatory, economic, punitive, and other allowable damages in accordance with the enlightened conscience of an

EXHIBIT "A" - Page 9

Copy from re:SearchGA

**Exhibit B**

impartial jury from the Defendants and as permitted under Georgia law;

(d) Plaintiffs have a trial by jury;

(e) Plaintiffs have such other relief as this Court deems just and proper.

This 13th day of March, 2020.

**JAMES A. RICE, JR., P.C.**

*/s/ James A. Rice, Jr.*
James A. Rice, Jr.
Georgia Bar Number 602811
Attorney for Plaintiffs

563 Spring Street, NW
Atlanta, GA  30308
404-255-4448 (phone)
404-842-7710 (facsimile)

STATE COURT OF
DEKALB COUNTY, GA.
3/13/2020 11:27 AM
E-FILED
BY: Monica Gay

Copy from re:SearchGA

**Exhibit B**

# EXHIBIT "B"

May 22, 2018

**VIA MAIL AND EMAIL (Josh@myardent.com)**
Josh Z. Morton, Property Manager
Ardent Residential
PO Box 2800
Sandy Springs, GA 30358

Dear Mr. Morton:

Please allow this letter to inform you that our firm has been retained to investigate the facts and circumstances surrounding the burglary and shooting of Kurtis Gilstrap at the Waldrop Station Condominiums that took place on April 18, 2018 at 11101 Waldrop Place, Decatur, GA 30034. (See attached incident report.) This letter is to request the preservation of certain evidence related to this incident. If you fail to preserve and maintain this evidence, we will seek any sanctions available under Georgia law. R.A. Siegel Co. v. Bowen, 246 Ga. App. 177, 539 S.E.2d 873 (2000). We specifically request that the following evidence be maintained and preserved and not be destroyed, modified, altered, repaired, or changed in any manner:

1. Any copies of video surveillance of the Property on April 17, 2018 and April 18, 2018;

2. Daily logs or other documents prepared by courtesy officers for the day of the Incident and the 5-year period preceding the Incident;

3. All photographs related to the Incident including photographs of the scene and of Kurtis Gilstrap;

4. Any e-mails, electronic messages, letters, memos, or other documents concerning the shooting incident of Mr. Gilstrap;

5. Any emails, documents, or reports maintained by the Property for a 5-year preceding this incident regarding any alleged crime occurring on the property;

6. Any reports, memos, notes, logs or other documents evidencing complaints about crime occurring on the property for the past five years;

7. Any and all documents regarding any investigation into this shooting or any reported incident of crime at property;

---

## EXHIBIT "B" - Page 1

**Exhibit B**

8. Any and all documents referring to any contracts, communication, agreements between Property and Pacific Holdings Partnership;

9. Any and all documents referring to any contracts, agreements or communication between Property and any security company.

In addition to our request to preserve evidence, we request that you provide (1) the name of the insurer; (2) the name of each insured; (3) the limits of liability coverage; and (4) a statement of any policy or coverage defense that such insurer reasonably believes is available with regard to each known policy of liability insurance of your insured, including excess or umbrella insurance. Further, please provide a copy of all applicable insurance policies with declaration pages. Please forward our request for information to all affected insurers. All affected insurers are asked to respond tot his request promptly to avoid the filing of a lawsuit at this time.

Thank you for your cooperation in this matter. If you have any questions, please do not hesitate to call us at 404-222-9922.

Sincerely,

Shean D. Williams

SDW/vda
Enclosure

EXHIBIT "B" - Page 2

**Exhibit B**

# EXHIBIT "C"

**Exhibit B**

**From:** Josh Morton <josh@myardent.com>
**Sent:** Tuesday, May 22, 2018 3:28 PM
**To:** Lanier Coulter <glc@coultersierra.com>
**Subject:** FW: Waldrop Park - Kurtis Gilstrap - Our File #180046

Hey Lanier,

I just received the below email and attachment regarding a shooting at Waldrop Park. Please handle or advise next steps.

Thank you!

Regards,



*Ardent Residential is expanding into Florida, the Carolinas and Tennessee!*

EXHIBIT "O" Page 1

Exhibit B

**Joshua Z. Morton, CAM**
Regional Portfolio Director

Email: josh@myardent.com
Website: MyArdent.com

Office: 844-9-ARDENT ext. 1004
Direct: 404-400-3099
Fax: 404-969-4698

Closing Letters/Packages can be requested here: Closing & Resale Documents
Condo/HOA Questionnaires can be requested here: Condo & HOA Questionnaires
Need to access your community's portal: Homeowner Login
Online payments can be made here: Homeowner Login
Want to become a preferred vendor? Become a Preferred Vendor

*Interested in our Condo & HOA Management Services?* Condo & HOA Services
*Interested in our Rental Management Services?* Rental Management
*Interested in our Multi-Family Management Services?* Apartment & Multi-Family

This e-mail message and all attachments contain privileged and confidential information intended solely for the use of the addressee. The information contained herein or attached hereto is provided solely for the purpose of informing members of the current financial status of the association and is not intended for public use or distribution. The financial information reported is current only through the date posted on the report. If the reader of this message is not the intended recipient you are hereby notified that any reading, distribution, copying, or other use of this message or its attachments are strictly prohibited and you are requested to delete this message and all copies.

**From:** Vickie Amos <vamos@cochranfirmatl.com>
**Sent:** Tuesday, May 22, 2018 2:32 PM
**To:** Josh Morton <josh@myardent.com>
**Cc:** Shean Williams <swilliams@cochranfirmatl.com>
**Subject:** Waldrop Station - Kurtis Gilstrap - Our File #180046

Dear Mr. Morton,

I am sending the attached letter on behalf of attorney Shean Williams. A hard copy has been sent via U.S. Mail.

## THE COCHRAN FIRM — ATLANTA

VICKIE AMOS
*Senior Paralegal*
100 Peachtree Street, NW / Suite 2600
Atlanta, GA 30303
DIRECT:   (678) 244-2653
PHONE:   (404) 222-9922
FAX:     (404) 222-0170
EMAIL:   VAmos@cochranfirmatl.com
WEBSITE:  www.cochranfirmatl.com

EXHIBIT "O" Page 2

Exhibit B

# EXHIBIT "D"

# LIABILITY NOTICE OF OCCURRENCE / CLAIM

**ACORD**

| AGENCY | | INSURED LOCATION CODE | DATE OF LOSS AND TIME | | |
|---|---|---|---|---|---|
| Hamby & Aloisio Inc. | | | 04/12/2018 | 12:00 | ☒ AM ☐ PM |

**AGENCY**
Hamby & Aloisio Inc.
53 Perimeter Center East #400

Atlanta GA 30346

| CONTACT NAME: | Allyson Golob |
| PHONE (A/C, No, Ext): | (770) 551-3270 |
| FAX (A/C, No): | (770) 551-3289 |
| E-MAIL ADDRESS: | allyson@hains.com |
| CODE: | SUBCODE: |
| AGENCY CUSTOMER ID: | 00039008 |

**INSURED LOCATION CODE**

**CARRIER**
Arch Specialty

**NAIC CODE**

**POLICY NUMBER**
AGL0047333-00

**LINE OF BUSINESS**
General Liability

## INSURED

| NAME OF INSURED (First, Middle, Last) | INSURED'S MAILING ADDRESS |
|---|---|
| Waldrop Park Condominium Association, DBA: C/O Condominium Concepts Inc | 1200 Lake Hearn Drive |

| DATE OF BIRTH | FEIN (if applicable) |
|---|---|
| | 050602111 |

Ste 275
Atlanta GA 30319

| PRIMARY PHONE # | ☐ HOME ☒ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|
| (404) 917-0600 | | | |

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

## CONTACT   ☐ CONTACT INSURED

| NAME OF CONTACT (First, Middle, Last) | CONTACT'S MAILING ADDRESS |
|---|---|
| Josh Morton | |

| PRIMARY PHONE # | ☐ HOME ☒ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|
| (404) 400-3099 | | | |

| WHEN TO CONTACT | PRIMARY E-MAIL ADDRESS: josh@myardent.com |
|---|---|
| | SECONDARY E-MAIL ADDRESS: |

## OCCURRENCE

| LOCATION OF OCCURRENCE | POLICE OR FIRE DEPARTMENT CONTACTED |
|---|---|
| STREET: 1100 Waldrop Place | |
| CITY, STATE, ZIP: Decatur GA 30034-6703 | REPORT NUMBER |
| COUNTRY: | |

DESCRIBE LOCATION OF OCCURRENCE IF NOT AT SPECIFIC STREET ADDRESS:

DESCRIPTION OF OCCURRENCE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Letter from Attorney for Curtis and Jessica Gilstrap regarding a shooting

## TYPE OF LIABILITY

| PREMISES: INSURED IS | OWNER | TENANT | | TYPE OF PREMISES |
|---|---|---|---|---|

OWNER'S NAME & ADDRESS (If not insured)

| PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

| PRODUCTS: INSURED IS | MANUFACTURER | VENDOR | | TYPE OF PRODUCT |
|---|---|---|---|---|

MANUFACTURER'S NAME & ADDRESS (If not insured)

| PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|

PRIMARY E-MAIL ADDRESS:
SECONDARY E-MAIL ADDRESS:

WHERE CAN PRODUCT BE SEEN?

The ACORD name and logo are registered marks of ACORD

Exhibit "D" Page 1

Exhibit B

## INJURED / PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) | | | | EMPLOYER'S NAME & ADDRESS | | | |

| PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |

| PRIMARY E-MAIL ADDRESS: | | PRIMARY E-MAIL ADDRESS: |
|---|---|---|
| SECONDARY E-MAIL ADDRESS: | | SECONDARY E-MAIL ADDRESS: |

| AGE | SEX | OCCUPATION | DESCRIBE INJURY |
|---|---|---|---|

| WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|

| DESCRIBE PROPERTY (Type, model, etc.) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? |
|---|---|---|

## WITNESSES

| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|---|
| | PRIMARY E-MAIL ADDRESS: | | | |
| | SECONDARY E-MAIL ADDRESS: | | | |
| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
| | PRIMARY E-MAIL ADDRESS: | | | |
| | SECONDARY E-MAIL ADDRESS: | | | |
| NAME AND ADDRESS | PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # | ☐ HOME ☐ BUS ☐ CELL |
| | PRIMARY E-MAIL ADDRESS: | | | |
| | SECONDARY E-MAIL ADDRESS: | | | |

## REMARKS (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| REPORTED BY | REPORTED TO |
|---|---|

ACORD 3 (2016/10)

Exhibit "D" Page 2

Exhibit B

**Applicable in Alabama:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.

**Applicable in Alaska:** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Applicable in Arizona:** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**Applicable in Arkansas:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Applicable in California:** For your protection California law requires the following to appear on this form. Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Applicable in Colorado:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Applicable in Delaware:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**Applicable in the District of Columbia:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**Applicable in Florida:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Applicable in Hawaii:** Any person who intentionally or knowingly misrepresents or conceals material facts, opinions, intention, or law to obtain or attempt to obtain coverage, benefits, recovery, or compensation commits the offense of insurance fraud which is a crime punishable by fines or imprisonment or both.

**Applicable in Idaho:** Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement containing any false, incomplete or misleading information is guilty of a felony.

**Applicable in Indiana:** A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

**Applicable in Kansas:** Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

**Applicable in Kentucky:** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Applicable in Louisiana:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Applicable in Maine:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or denial of insurance benefits.

**Applicable in Maryland:** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Applicable in Michigan:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Applicable in Minnesota:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**Exhibit "D" Page 3**

Page 3 of 4

**Exhibit B**

**Applicable in Nevada:** Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a category D felony.

**Applicable in New Hampshire:** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud as provided in RSA 638:20.

**Applicable in New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Applicable in New Mexico:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**Applicable in New York:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Applicable in Ohio:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Applicable in Oklahoma:** WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Applicable in Oregon:** Any person who knowingly and with intent to defraud or solicit another to defraud the insurer by submitting an application containing a false statement as to any material fact may be violating state law.

**Applicable in Pennsylvania:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Applicable in Puerto Rico:** Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**Applicable in Rhode Island:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Applicable in Tennessee:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Applicable in Texas:** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Applicable in Virginia:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Applicable in Washington:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Applicable in West Virginia:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

Exhibit "D" Page 4

Exhibit B

# JAMES A. RICE, JR., P.C.

**WWW.RICEFIRM.COM**

**ATLANTA OFFICE**
563 SPRING STREET, NW
ATLANTA, GEORGIA 30308
Telephone 404-255-4448
Facsimile 404-842-7710

**DULUTH OFFICE**
3863 POSTAL DRIVE #210
DULUTH, GEORGIA 30096
Telephone 678-710-6910
Facsimile 678-710-6918

*PLEASE RESPOND TO THE ATLANTA OFFICE*

October 21, 2019

***Sent Via Certified Mail/Return Receipt Requested***
***And Sent Via First Class U.S. Mail***

Waldrop Park Condominium Association, Inc.　　Ardent Residential, LLC
c/o Registered Agent, Ardent Residential, LLC　　c/o Registered Agent Susan T. Grisson
5555 Glenridge Connector　　　　　　　　　　　Grissom Law, LLC
Suite 200　　　　　　　　　　　　　　　　　　　10475 Medlock Bridge Road, Suite 215
Atlanta, GA 30342　　　　　　　　　　　　　　　Johns Creek, GA 30097

Re:　My Clients:　　　　　　Curtis and Jessica Gilstrap
　　　Date of Incident:　　　　April 12, 2018
　　　Location of Incident:　11101 Waldrop Place
　　　　　　　　　　　　　　　Decatur, Georgia 30034

Dear Sir/Madam:

Please be advised that my law firm represents Curtis and Jessica Gilstrap regarding the April 12, 2018 shooting. Please accept this as both a letter of representation and a spoliation letter to ensure that all relevant and potentially relevant information, documents and other items are not destroyed, altered or modified in any way. We have enclosed the proper documentation for production of each and every policy of insurance which does or may cover the incident at issue. Pursuant to O.C.G.A. § 33-3-28, please provide that information to us at your earliest convenience as well as place your insurer, to the extent they have not already been placed, on notice of the incident and resulting damages and forthcoming lawsuit.

Of course, this does not replace any documents or items any other person or entity previously requested. In that regard, please ensure the following are kept without destruction, alteration or modification regarding the premises at issue:

(1)　All employee and/or personnel files in existence as of April 12, 2018;

(2)　All leasing files that existed as of April 12, 2018;

(3)　All work orders and/or work request orders that existed as of April 12, 2018;

(4)　All key/locking repair/maintenance orders as of April 12, 2018;

(5)　All receipts, invoices or payments regarding any windows, doors or security features that existed as of April 12, 2018;

# Exhibit "D" Page 5

# Exhibit B

(6) All complaints regarding the premises in any form or fashion, including but not limited to security, lighting, cleanliness, broken doors, broken windows, loitering, etc. that existed as of April 12, 2018;

(7) All security assessments that occurred, requested or scheduled as of April 12, 2018;

(8) All offers to perform security evaluations or assessments that existed as of April 12, 2018;

(9) All security contracts that existed as of April 12, 2018;

(10) All efforts to obtain security, all security police officers, resource officers or any other form of security that existed as of April 12, 2018;

(11) All contracts and agreements regarding security that was in place at any point in time for any duration of time in the five (5) years prior to April 12, 2018;

(12) All efforts at locating police reports (and information and documents received) and the level of crime at the premises and surrounding area within five (5) years prior to April 12, 2018;

(13) All video and photographs of the condominiums at issue before and since the April 12, 2018 incident;

(14) All videos and photographs regarding the incident at issue regarding;

(15) All documentation to and from Curtis Gilstrap, Jessica Gilstrap (formerly known as Jessica Powell) or anyone residing at 11101 Waldrop Place, Decatur, GA 30034 at any time;

(16) All leases in effect at the time of the incident regarding 11101 Waldrop Place, Decatur, GA 30034;

(17) All documents from any association meeting, minutes from any association meeting, recordings of any meeting within two (2) years prior to the incident at issue; and

(18) All documents, recordings or items regarding the existence of security or lack of security at Waldrop Park Condominiums before and after the incident at issue.

Please note this is critically important and that the failure to maintain the evidence, the failure to properly ensure it is not destroyed will result in extreme sanctions. Thank you in advance.

Very truly yours,

*James A. Rice, Jr.*

James A. Rice, Jr.

## REQUEST FOR INSURANCE INFORMATION

I, Curtis Gilstrap, hereby attest and swear that I have retained James A. Rice, Jr. and the law firm of James A. Rice, Jr., P.C. to represent me in the April 12, 2018 incident. I hereby request, under oath, copies of any and all applicable insurance information, including, but not limited to liability, medpay, and umbrella/excess coverage as set forth in O.C.G.A. § 33-3-28.

_James A. Rice. Jr,_
_attorney for Curtis Gilstrap_

_____
Signature

__10/21/19_____
Date

SWORN TO AND SUBSCRIBED before me
this ___21st___ day of ___October___, 2019.

_____
Notary Public

*[Notary seal: SAMOTHY HOEUNG, MY Commission Expires 06-20-2020, NOTARY PUBLIC, COBB COUNTY, GEORGIA]*

# Exhibit "D" Page 7

# Exhibit B

# EXHIBIT "E"

Exhibit B

 **Arch** | **Insurance**

Arch Specialty Insurance Company

1299 Farnam Street
Suite 500
Omaha, NE 68102-1880

P.O. Box 542033
Omaha, NE 68154

T: 877.688.2724
F: 866.266.3630

www.archinsurance.com

October 29, 2019

Waldrop Park Condominium Association
Attn: Josh Morton
1200 Lake Hearn Drive
Suite 275
Atlanta, GA 30319
josh@myardent.com

Re:    Insured:        Waldrop Park Condominium Association
        Policy Number:    AGL004733300
        Policy Period:     05/15/2017 - 05/15/2018
        Claimant(s)/Matter:  Curtis and Jessica Gilstrap
        Claim Number:    000013405910
        Date of Loss:      4/12/2018

Dear Mr. Morton:

On behalf of Arch Specialty Insurance Company ("Arch"), this will acknowledge receipt of the above referenced matter. We will be reviewing the information that has been provided to us in an effort to determine what rights or coverage, if any, you may be entitled to pursuant to the terms of the above referenced policy (the "Policy").

Once we have completed our review, we will provide our coverage analysis. In the interim, we consider all rights under the policy and at law (common, statutory and otherwise), to be mutually reserved. We specifically reserve the right to assert any and all defenses to coverage, including those that may be developed or discovered in the course of our further coverage investigation.

We remind you of your continuing obligation to fully and completely cooperate with Arch in connection with this matter, and to keep us apprised of developments as this matter proceeds. Accordingly, in the event you receive or obtain additional information relating to this matter, please advise us accordingly and forward all pertinent documentation and information.

---

Arch Specialty Insurance Company is licensed in the state of Missouri only

**Exhibit "E" Page 1**

**Exhibit B**

When corresponding with us on this matter, kindly refer to the above-noted policy number and claim number. **Please note that this matter has been assigned to Jillian Coogan who may be reached at 201-743-3863 or via e-mail at JCoogan@archinsurance.com**

Very truly yours,

Stephen McCarthy, VP
VP, Contract Binding Claims
Arch Insurance Company
300 Plaza Three, 3rd Floor
Jersey City, NJ 07311
PH (201)743- 4595
Cell (201)208-0196

/ko

cc:     Terri Autumn Sterling
        AMWINS Access Insurance Services
        One Gresham Landing
        Stockbridge, GA 30281
        Claims.access@amwins.com

        Allyson Golob
        Hamby & Aloisio Inc
        53 Perimeter Center East
        #400
        Atlanta, GA 30346
        allyson@hains.com

# EXHIBIT "F"



Arch Specialty Insurance Company
1299 Farnam Street
Suite 500
Omaha, NE 68102-1880

P.O. Box 542033
Omaha, NE 68154

T: 877.688.2724
F: 866.266.3630

www.archinsurance.com

December 9, 2019

*CERTIFIED MAIL/RRR*
*ARTICLE # 9214 8969 0099 9790 1631 3596 63*
*REGULAR MAIL*
*& EMAIL:* josh@myardent.com

Ardent Residential
Attn: Josh Morton
1200 Lake Hearn Drive
Suite 275
Atlanta, GA 30319

Re:  Insured:            Waldrop Park Condominium Association
     Policy Number:       AGL004733300
     Policy Period:       05/15/2017 - 05/15/2018
     Master Company:      Arch Specialty Insurance Company
     Claimant(s)/Matter:  Curtis and Jessica Gilstrap
     Date of Loss:        04/12/2018
     Claim Number:        000013405910

To The Authorized Representative(s) of Ardent Residential:

   I am writing on behalf of Arch Specialty Insurance Company ("Arch") in response to your tender of an October 21, 2019 representation and spoliation letter sent to Waldrop Park Condominium Association ("Waldrop Park") by attorney James Rice on behalf of Curtis and Jessica Gilstrap, who were leasing a condominium unit at Waldrop Park. Please be advised that because no lawsuit has yet been filed against Waldrop Park, Arch has no duty to defend Waldrop Park at this time. Please note that Arch will continue to investigate this matter pursuant to a full reservation of rights as set forth below.

   If you have additional information you believe Arch should consider in its continuing investigation, please provide it to Arch at your earliest convenience. Arch does not waive any current or future rights which may become evident, and reserves the right to

Arch Specialty Insurance Company is licensed in the state of Missouri only

**Exhibit "F" Page 1**

**Exhibit B**

modify, supplement or otherwise alter its coverage determination should additional information so warrant.

It is our understanding that Curtis and Jessica Gilstrap leased a condominium unit at Waldrop Park. On April 12, 2018, Ms. Gilstrap was in the living room when she noticed unknown men breaking into Mr. Gilstrap's vehicle. Mr. Gilstrap then went outside to confront the men breaking into his vehicle, and was immediately shot in his chest, right bicep, and lower abdomen.

In April 2018, just prior to this shooting, Ardent Residential, LLC ("Ardent") took over management of Waldrop Park. You provided that Ardent was unaware of Mr. Gilstrap's shooting until Ardent was contacted by Arch via email on October 29, 2019. At the time of the shooting, you said that there was no security contract in place.

### COVERAGE ANALYSIS

Arch issued to Waldrop Park a commercial general liability policy with policy number Policy No. AGL0047333-00 and policy period of 05/15/2017 to 05/15/2018 (the "Arch Policy"). The Arch Policy has an "each occurrence" limit of $1 million and an aggregate limit of $2 million.

The Arch Policy contains the following condition precedent to coverage:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\*\*\*\*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization

which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Arch's first notice of any claim related to this shooting was not until Waldrop Park's tender of the claimant's representation and spoliation letter on October 28, 2019. The shooting of Mr. Gilstrap occurred on April 12, 2018, over eighteen months earlier. To the extent that Waldrop Park failed to timely give notice to Arch of the shooting, then Waldrop Park would be in breach of the Arch Policy's notice condition precedent to coverage. Therefore, Arch reserves the right to decline any duty to defend or indemnify Waldrop Park for this claim because of its failure to timely provide notice of the shooting to Arch.

Additionally, Arch Policy contains the following provisions related to the limits of your insurance:

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage **C**;
   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage **B**.

Please be advised that Waldrop Park submitted a prior claim regarding the shooting of Terrel Prince occurring on December 12, 2017, which also falls during the Arch Policy's coverage period. Arch settled this claim for the $1,000,000 per occurrence limit on May 22, 2019. The Arch Policy's aggregate limit is $2,000,000, which was by eroded in half by this prior claim. Therefore, the maximum limits available for this claim would be $1,000,000 in the event that coverage is provided under the Arch Policy.

The Arch Policy contains other provisions which could be relevant for reasons not now foreseen or because of later-discovered or later-revealed facts not currently known by Arch with respect to this matter. Arch will continue its coverage investigation in this matter pursuant to a full reservation of rights as set out in this letter. Arch reserves the right to amend or supplement this reservation of rights, including the right to deny coverage in this matter.

Nothing in this letter is to be construed as a waiver by Arch of any policy terms, conditions, exclusions, or limitations not expressed in this letter or as a waiver, relinquishment, or other limitation of Arch's rights. By limiting policy references to those cited, Arch does not waive the right to assert other provisions of the Arch Policy and/or legal principles should additional facts, not currently known, become available. The Arch Policy is incorporated by reference into this letter as if stated in full. If you have any other information you believe impacts our coverage determination in this letter, please provide it to the undersigned for immediate consideration.

Please note that Arch's present position is based on the information currently available and provided. We reserve the right to review any additional claims, lawsuits or

amendments to the current matter and to make a separate determination as to whether either a defense or indemnity may be provided. Our decision on coverage is based only on the facts presented to date and should not be construed as applicable to an amendment to this claim. If suit is filed against Waldrop Park, you must immediately provide us with such documents so a separate determination can be made as to whether defense or indemnity may be owed under the Arch Policy.

Please advise immediately if you disagree with this reservation of rights or if you are aware of additional information that would demonstrate that Arch potentially has an obligation to defend or indemnify Waldrop Park in this matter.

If you have any questions regarding the content of this letter and/or our position, please contact me at 201-743-3863 or via email at jcoogan@archinsurance.com

Very truly yours,

Jillian Coogan, Esq.
Claims Examiner, Contract Binding Operations
Arch Insurance Group
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107
201-743-3863 (office)
201-232-3365 (cell)
866-266-3630 (fax)

/cmd

cc:   *CERTIFIED MAIL/RRR*
      *ARTICLE # 9214 8969 0099 9790 1631 3598 16*
      *REGULAR MAIL*
      Waldrop Condominium Association
      1200 Lake Hearn Drive, Suite 275
      Atlanta, GA 30319

      *CERTIFIED MAIL/RRR*
      *ARTICLE # 9214 8969 0099 9790 1631 3598 85*
      *REGULAR MAIL*
      *& EMAIL*EMAIL: claims.access@amwins.com
      AMWINS Access Insurance
      One Gresham Landing
      Stockbridge, GA 30281
      Attn: Terri Autumn Sterling

      *CERTIFIED MAIL/RRR*
      *ARTICLE #9214 8969 0099 9790 1631 3599 53*
      *REGULAR MAIL*
      *& EMAIL:* allyson@hains.com
      Hamby & Aloisio Inc
      53 Perimeter Center East #400
      Atlanta, GA 30346
      Attn: Allyson Golob

**Exhibit "F" Page 6**

**Exhibit B**

# EXHIBIT "G"

**Exhibit B**



Arch Specialty Insurance Company
1299 Farnam Street
Suite 500
Omaha, NE 68102-1880

P.O. Box 542033
Omaha, NE 68154

T: 877.688.2724
F: 866.266.3630

www.archinsurance.com

March 25, 2020

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1633 1799 48***
***REGULAR MAIL***
***& EMAIL:***josh@myardent.com
Waldrop Condominium Association
1200 Lake Hearn Drive, Suite 275
Atlanta, GA 30319

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1633 1799 62***
***REGULAR MAIL***
***& EMAIL:***josh@myardent.com
Ardent Residential LLC
Attn: Josh Morton
1200 Lake Hearn Drive Suite 275
Atlanta, GA 30319

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1633 1799 79***
***REGULAR MAIL***
Waldrop Condominium Association
11101 Waldrop Place,
Decatur, GA 30034
Attn: Caroline Simmons

Re:  Insured:               Waldrop Park Condominium Association
     Policy Number:         AGL004733300
     Policy Period:         05/15/2017 - 05/15/2018
     Master Company:        Arch Specialty Insurance Company
     Claimant(s)/Matter:    Curtis and Jessica Gilstrap
     Date of Loss:          04/12/2018
     Claim Number:          000013405910

**Exhibit "G" Page 1**

**Exhibit B**

To The Authorized Representative(s) of Waldrop Park Condominium Association and Ardent Residential LLC:

As you may know, the captioned matter has been assigned to me for handling on behalf of Arch Specialty Insurance Company ("Arch"), the Commercial General Liability carrier for Waldrop Park Condominium Association. On or about October 21, 2019, Arch acknowledged receipt of the above reference claim involving alleged bodily injuries sustained by claimant Curtis Gilstrap on or about April 12, 2018 following an alleged shooting incident.

On or about March 24, 2020, Arch received notice of a Summons and Complaint filed in Georgia State County in DeKalb County captioned: *Curtis Gilstrap and Jessica Gilstrap vs. Waldrop Park Condominium Association Inc. and Ardent Residential LLC* (hereinafter the "Gilstrap Suit").

We are writing to you in your capacity as authorized representative of the named insured Waldrop Park Condominium Association ("Waldrop") for insurance coverage purposes. To the extent that you are not acting in that capacity, please forward a copy of this letter to the appropriate person and advise us of that person's name and contact information, including mailing and email address.

We understand that Ardent Resident LLC is the property manager for Waldrop and thus a definitional insured under the Arch Policy. If this is incorrect, please advise us as soon as possible.

Arch is currently reviewing the Gilstrap Suit in connection with the Commercial General Liability policy issued to Waldrop under policy number AGL0047333-00 for the policy period of May 15, 2017 to May 15, 2018 (the "Arch Policy") and conducting a complete coverage investigation. Upon completion of Arch's coverage investigation, a formal coverage letter will be issued to Waldrop and Ardent Residential LLC.

In the interim, Arch will provide Waldrop and Ardent Residential LLC with a defense in the Gilstrap Suit but does so subject to **a complete reservation of rights.** Please be advised that Arch does so without waiving its coverage defenses. Arch's total reservation of rights in this matter includes the right to continue to investigate the claim under a reservation of rights and then withdraw its defense or deny coverage if its investigation reflects a good-faith basis for doing so. Arch's total reservation of rights also includes the right to initiate a declaratory action to establish non-coverage while defending under a reservation of rights. Please be advised that if Arch files a declaratory judgment action it may seek repayment of defense costs should it prevail in its declaratory judgment action.

Please be advised that Arch reserves its rights, including the right to deny coverage to Waldrop and/or Ardent Residential LLC based upon grounds other than those expressly set forth in this letter, and to supplement and/or amend this letter to address additional

coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements and definitions contained in the Arch Policy and additional facts that may come to Arch's attention. Nothing stated herein and no further action taken by Arch or on its behalf should be construed as a waiver of any of its rights under the Arch Policy. By providing this or any prior or future correspondence to Arch, or engaging in any prior or future discussions with Arch, Arch does not waive any rights that it has under the Arch Policy, at law, or in equity. In the event that new or different facts become known in the future, we reserve the right under the Arch Policy to revise our coverage determination as may be appropriate.

No action taken by Arch, its attorneys or its representatives in the investigation of this matter is intended to be, nor is to be construed as an admission of coverage or liability under the Arch Policy.

If you believe that there are any additional documents or information that may bear on Arch's position, please advise us immediately and provide us with all relevant documents and information. Additionally, if you believe that any other Arch insurance policies may potentially be implicated by this matter, please advise us immediately, provide us with all relevant information or documents and reference any applicable policy number(s).

Arch also requests that you notify any other primary carriers, excess and/or umbrella carriers for the relevant time period(s) at issue. Arch also requests that you provide copies of any responses from such carriers to Arch. If you have any additional information that may affect this decision, please forward same for review and consideration.

If there are any questions regarding this matter, please feel free to contact me at 201-743-3863 or via email at jcoogan@archinsurance.com .

Very truly yours,

*Jillian Coogan*

Jillian Coogan, Esq.
Claims Examiner, Contract Binding Operations
Arch Insurance Group
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107
201-743-3863 (office)
201-232-3365 (cell)
866-266-3630 (fax)

/cmd

cc: ***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1633 1800 36***
***REGULAR MAIL***
***& EMAIL:*** claims.access@amwins.com
AMWINS Access Insurance
One Gresham Landing
Stockbridge, GA 30281
Attn: Terri Autumn Sterling

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1633 1800 50***
***REGULAR MAIL***
***& EMAIL:*** allyson@hains.com
Hamby & Aloisio Inc
53 Perimeter Center East #400
Atlanta GA 30346
Attn: Allyson Golob

Letter from Adjustor as it pertains to Claim # 13405910/AGL004733300/Curtis & Jessica Gilstrap

From: Darden-Tobias, Corinne <CDarden-Tobias@archinsurance.com>
Received: 3/25/2020 3:23:44 PM
To: 'josh@myardent.com'<josh@myardent.com>; 'josh@myardent.com'<josh@myardent.com>
Cc: 'claims.access@amwins.com'<claims.access@amwins.com>; 'allyson@hains.com'<allyson@hains.com>
Attachments: Attachment.pdf

Please see attachment for contact information.

Thank You,

*Corinne Darden*

Mail Technician
Arch Insurance Group
P.O. Box 542033,
Omaha NE 68154
402-452-5937
Fax: 866.266.3630
Email: CDarden-Tobias@archinsurance.com

The information contained in this e-mail message may be privileged and confidential information and is intended only for the use of the individual and/or entity identified in the alias address of this message. If the reader of this message is not the intended recipient, or an employee or agent responsible to deliver it to the intended recipient, you are hereby requested not to distribute or copy this communication. If you have received this communication in error, please notify us immediately by telephone or return e-mail and delete the original message from your system.

# Exhibit "G" Page 5

# Exhibit B

# EXHIBIT "H"



Arch Specialty Insurance Company
1299 Farnam Street
Suite 500
Omaha, NE 68102-1880

P.O. Box 542033
Omaha, NE 68154

T: 877.688.2724
F: 866.266.3630

www.archinsurance.com

April 3, 2020

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1633 2525 97***
***& EMAIL:*** josh@myardent.com

Ardent Residential, LLC
Attn: Mr. Morton
1200 Lake Hearn Drive
Suite 275
Atlanta, GA 30319

|  |  |  |
|---|---|---|
| Re: | Insured: | Waldrop Park Condominium Association |
|  | Lawsuit: | *Gilstrap v. Waldrop Park Condominium Association, Inc.* |
|  |  | State Court of Dekalb County, GA, No. 20A79653 |
|  | Policy Number: | AGL004733300 |
|  | Policy Period: | 05/15/2017 - 05/15/2018 |
|  | Master Company: | Arch Specialty Insurance Company |
|  | Claimant(s)/Matter: | Curtis and Jessica Gilstrap |
|  | Date of Loss: | 04/12/2018 |
|  | Claim Number: | 000013405910 |

To The Authorized Representative(s) of Ardent Residential, LLC:

Arch Specialty Insurance Company ("Arch") has received your tender for defense of the above-referenced lawsuit (the "Lawsuit") against Waldrop Park Condominium Association ("Waldrop Park") and Ardent Residential, LLC ("Ardent") (collectively "Defendants"). After review of the allegations in the lawsuit and the language in the Arch insurance policy, Arch will agree to defend Ardent pursuant to a full reservation of rights as set forth below. By agreeing to defend Ardent for the Lawsuit, Arch does not waive any current or future rights which may become evident. Arch reserves the right to modify its coverage determination if additional information is developed that warrants modification, including issuing a denial of coverage.

# Exhibit "H" Page 1

# Exhibit B

## THE LAWSUIT

While we recognize that you may not agree with the allegations made in the Lawsuit, the following is our understanding of the facts as alleged in the Lawsuit.

The Lawsuit alleges that on April 12, 2018, Plaintiff Curtis Gilstrap was an invitee at the Waldrop Park premises when he was assaulted and shot, causing serious and permanent injuries (the "Incident"). Based upon this Incident, the Lawsuit alleges that Defendants negligently maintained, inspected, secured, patrolled, and managed the Waldrop Park premises. More specifically, the Lawsuit alleges that Defendants breached their duty to exercise ordinary care to keep their premises safe, despite having both actual and constructive knowledge of the criminal activity and hazardous conditions at the Waldrop Park premises. The Lawsuit alleges that Defendants are liable for the damages suffered by Mr. Gilstrap, which include personal injuries, pain and suffering, disability, disfigurement, mental anguish, economic loss, medical expenses, loss wages, permanent injuries, loss of enjoyment of life, and incidental expenses.

The Lawsuit further alleges that Defendants' negligent actions were willful and wanton, thus entitling Mr. Gilstrap to receive punitive damages pursuant to O.C.G.A. § 51-12-5.1. Further, the Lawsuit alleges that Defendants were, in bad faith, stubbornly litigious, entitling Mr. Gilstrap to receive reasonably attorney's fees pursuant to O.C.GA. § 13-6-11. Lastly, the Lawsuit alleges that Defendants' negligence created an ongoing nuisance at the premises prior to the Incident.

## COVERAGE ANALYSIS

Arch issued to Waldrop Park a commercial general liability policy with policy number Policy No. AGL0047333-00 and policy period of 05/15/2017 to 05/15/2018 (the "Arch Policy"). As the property management company responsible for Waldrop Park, Ardent qualifies as an "insured" under the Arch Policy. The Arch Policy has an "each occurrence" limit of $1 million and an aggregate limit of $2 million.

The Arch Policy contains the following condition precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*\*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
**(1)** How, when and where the "occurrence" or offense took place;
**(2)** The names and addresses of any injured persons and witnesses; and
**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

# Exhibit "H" Page 2

# Exhibit B

**b.** If a claim is made or "suit" is brought against any insured, you must:
**(1)** Immediately record the specifics of the claim or "suit" and the date received; and
**(2)** Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:
**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
**(2)** Authorize us to obtain records and other information;
**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization
which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**
No person or organization has a right under this Coverage Part:
**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or
**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.
A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Arch's first notice of any claim related to this shooting was not until Waldrop Park's tender of the claimant's representation and spoliation letter on October 28, 2019. The shooting of Mr. Gilstrap occurred on April 12, 2018, over eighteen months earlier. To the extent that Waldrop Park failed to timely give notice to Arch of the shooting, then Waldrop Park would be in breach of the Arch Policy's notice condition precedent to coverage. Therefore, Arch reserves the right to decline any duty to defend or indemnify Ardent for this claim because of the breach of the condition precedent to timely provide notice of the shooting to Arch.

Additionally, the Arch policy contains the following Punitive Damages Endorsement:

**PUNITIVE DAMAGES EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages.

The Lawsuit alleges, in part, that Defendants' actions "were willful and wanton and showed an entire want of care, raising the presumption of conscious indifference to the consequences. Accordingly, the Lawsuit alleges that Mr. Gilstrap is entitled to punitive damages from Defendants pursuant to O.C.G.A. § 51-12-5.1. The Punitive Damages Exclusion Endorsement, however, expressly bars coverage for any claims seeking punitive damages. Therefore, Arch reserves the right to deny and duty to defend and indemnify Ardent for any punitive damages claims.

Additionally, Arch Policy contains the following provisions related to the limits of your insurance:

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:
   a. Medical expenses under Coverage **C**;
   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
   c. Damages under Coverage **B**.

Please be advised that Waldrop Park submitted a prior claim regarding the shooting of Terrel Prince occurring on December 12, 2017, which also falls during the Arch Policy's coverage period. Arch settled this claim for the $1,000,000 per occurrence limit on May 22, 2019. The Arch Policy's aggregate limit is $2,000,000, which was by eroded in half by this prior claim. Therefore,

the maximum limits available for this claim would be $1,000,000 in the event that coverage is provided under the Arch Policy.

The Arch Policy contains other provisions for limiting coverage which could be relevant for reasons not now foreseen or because of the discovery of facts not currently known by Arch with respect to this matter. Arch will continue its coverage investigation in this matter pursuant to a full reservation of rights as set out in this letter. Arch reserves the right to amend or supplement this reservation of rights. Arch reserves the right to issue a complete declination of coverage in this matter should it determine that coverage does not apply to all of the asserted claims. Arch reserves the right to file a declaratory judgment action seeking a declaration of Arch's obligations, if any, under the Policy. Arch reserves the right to seek reimbursement of any defense costs paid on Ardent's behalf if a court finds that Arch has no duty to defend Ardent for all of the claims in the Lawsuit. Arch also reserves the right to withdraw from its participation in Ardent's defense.

Arch will continue its defense of Ardent at this time, however it does so subject to a full reservation of its rights under the law and under the insurance Policy. Arch does not waive its rights by continuing to investigate, negotiate for settlement, or by providing a defense in this legal action.

Further, if Ardent has not already done so, please notify all insurers for the relevant time period, including any other insurers under whose policies Ardent could qualify as an insured or additional insureds.

As you know, Arch has referred the defense of the Underlying Lawsuit to Christian Laycock, Esq. at Moore Ingram Johnson & Steele, LLP. He may be reached aby phone at 770-429-1499 and via their email address at chlaycock@mijs.com. Please provide them with your full cooperation.

Nothing in this letter is to be construed as a waiver by Arch of any policy terms, conditions, exclusions, or limitations not expressed in this letter or as a waiver, relinquishment, or other limitation of our rights. By limiting policy references to those cited, Arch does not waive the right to assert other provisions of the Arch Policy and/or legal principles should additional facts, not currently known, become available. The Arch Policy is incorporated by reference into this letter as if stated in full. If you have any other information you believe impacts our coverage determination in this letter, please provide it to the undersigned for immediate consideration.

We reserve the right to review any additional claims, lawsuits or amendments to the claims being made and to make a separate determination as to whether either a defense or indemnity may be provided. Our decision on coverage is based only on the facts presented to date and should not be construed as applicable to an amendment to this claim.

Please advise immediately if you disagree with this reservation of rights or if you are aware of additional information that would demonstrate that Arch potentially has an obligation to defend or indemnify Ardent in this matter.

If you have any questions regarding the content of this letter and/or our position, please contact me at 201-743-3863 or via email at jcoogan@archinsurance.com .

Very truly yours,

*Jillian Coogan*

Jillian Coogan, Esq.
Claims Examiner, Contract Binding Operations
Arch Insurance Group
Harborside 3
210 Hudson Street, Suite 300
Jersey City, NJ 07311-1107
201-743-3863 (office)
201-232-3365 (cell)
866-266-3630 (fax)

/cmd

cc:  ***VIA EMAIL:*** chlaycock@mijs.com
    Christian Laycock, Esq.
    Moore Ingram Johnson & Steele, LLP.

    ***VIA EMAIL:*** david.stroup@enstargroup.com
    David Stroup
    Enstar Inc.

    ***CERTIFIED MAIL/RRR***
    ***ARTICLE # 9214 8969 0099 9790 1633 2526 34***
    ***& EMAIL:*** claims.access@amwins.com
    AMWINS Access Insurance
    One Gresham Landing
    Stockbridge, GA 30281
    Attn: Terri Autumn Sterling

    ***CERTIFIED MAIL/RRR***
    ***ARTICLE # 9214 8969 0099 9790 1633 2526 58***
    ***& EMAIL:*** allyson@hains.com
    Hamby & Aloisio Inc
    53 Perimeter Center East #400
    Atlanta, GA 30346
    Attn: Allyson Golob

# Exhibit "H" Page 6

# Exhibit B