# EXHIBIT "F"

30(b)(6) Gary Lanier Coulter J.R.,   January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 1

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF GEORGIA
2                  ATLANTA DIVISION
3

   STARSTONE NATIONAL INSURANCE
4  COMPANY and ARCH SPECIALTY
   INSURANCE COMPANY,
5
         Plaintiffs,
6                               CIVIL ACTION
   VS.                   FILE NO. 1:20-cv-04398-JPB
7
   WALDROP CONDOMINIUM ASSOCIATION,
8  INC., ARDENT RESIDENTIAL, LLC,
   CURTIS GILSTRAP, and JESSICA
9  GILSTRAP,
10       Defendants.
11
12            30(b)(6) DEPOSITION OF
13     WALDROP CONDOMINIUM ASSOCIATION, INC.
14        GARY LANIER COULTER, JR., ESQ.
15              January 19, 2020
16                 10:15 a.m.
17            Hasson Law Group, LLP
18             3379 Peachtree Road
19              Atlanta, Georgia
20
21     Karen F. Gifford, RPR, CCR-B-1887
22
23
24
25

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 2

1           INDEX OF EXHIBITS

2  EXHIBIT      DESCRIPTION                              PAGE

3  Exhibit 21 Notice of 30(b)(6) Deposition              5

4  Exhibit 22 E-mails, Waldrop Park 000472-476           27

5  Exhibit 23 E-mails, Waldrop Park 000477-480           33

6  Exhibit 24 E-mails                                    44

7  Exhibit 25 StarStone policy Waldrop Park              52

8  000017-000044

9  Exhibit 26 Notice of 30(b)(60 Deposition              84

10 (Previously marked Exhibits 2, 3, 7, 8, 9, 12, 17,

11 18, and 20 attached for reference.)

12

13

14           INDEX TO EXAMINATION

15                                                       PAGE

16 By Mr. Jackson                                        5, 107

17 By Mr. Rice                                           50, 114

18 By Mr. Wingfield                                      92

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 13

1	Q. Okay. Did you review the declaratory
2	judgment complaint?
3	A. I did not.
4	Q. Did you review any insurance policies?
5	A. I did not.
6	Q. When you worked as counsel for Waldrop
7	Park, did you review any insurance policies for
8	them?
9	A. Waldrop Park has never engaged me to review
10	a policy.
11	Q. And so you've never reviewed their
12	insurance policies?
13	A. I have not.
14	Q. Did you even have copies of their insurance
15	policies?
16	A. I did not.
17	Q. At any point during the time frame that you
18	were dealing with claims involving Waldrop Park, did
19	you ever review any of their insurance policies?
20	A. On behalf of Waldrop Park, I have never
21	reviewed an insurance policy.
22	Q. Okay. Do you know how many liability
23	claims you provided some type of assistance or
24	guidance with, be it just providing notice or
25	whatever, for Waldrop Park?

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 19

1      Q. Okay. Did you have, as representative of
2   Waldrop Park, did you have any communications with
3   anyone at Ardent discussing the policy or details
4   about the policy?
5      A. No.
6      Q. And when I say the policy, I mean any of
7   the insurance policies that may have applied.
8      A. Not to my recollection at all.
9      Q. Okay. How many people at Ardent worked on
10  Waldrop Park while you were general counsel?
11     A. To my knowledge, there was Josh Morton, and
12  to my knowledge, I couldn't tell you the name, but I
13  believe on one occasion I was on a phone call about
14  collections with one other representative from
15  Ardent. And I apologize, I didn't dig around for
16  that, but I feel like I had a conference call with
17  the board and two representatives of Ardent on
18  collections at one point in time; in general, not a
19  specific case.
20     Q. So primarily Josh is who you dealt with?
21     A. Yes.
22     Q. Did Waldrop Park, either directly or
23  through its property management company, have any
24  claims process procedures in place? In other words,
25  what to do when a claim was known about or a

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 20

1  potential claim was known about.
2       A. I'm not aware of any written procedures.
3  The routine was to notify its insurance agent.
4       Q. And why was that the procedure?
5       A. In community associations in general, in my
6  experience, whether it's the manager or counsel, the
7  agent is who is notified and the agent notifies the
8  carrier and confirms that to their client.
9       Q. Were you familiar with who Waldrop Park's
10 insurance agent was?
11      A. Yes.
12      Q. And who was that?
13      A. The firm was Hamby & Aloisio.  As far as
14 the agent directly, I couldn't tell you if it was
15 Marty or Buddy specifically that was the agent.
16      Q. Okay.  But your understanding is that Hamby
17 & Aloisio was the insurance agent for Waldrop Park?
18      A. Yes.
19      Q. That was the company that Waldrop Park went
20 to, either directly or through its property
21 management company, to acquire its insurance policy?
22      A. That's my understanding.
23      Q. And if there was a claim, because it was
24 routine in the industry, you would notify the agent
25 who was then expected to give notice to the carrier?

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 21

1        A. Yes.
2        Q. Since you hadn't read any of the insurance
3   policies for Waldrop Park at any point in time, you
4   didn't report claims to the insurance agency because
5   of something that was written in the policies?
6        A. No.
7        Q. You were not, obviously -- well, let me
8   back up.
9            Were you in direct communication with Hamby
10  at any point in time?
11       A. On the Gilstrap matter?
12       Q. Generally.
13       A. In general, yes, I've been in direct
14  contact with Buddy Whitaker on other association
15  claim matters.
16           Again, me personally, I don't do insurance
17  defense work so my involvement is strictly
18  association client has a claim, or a potential
19  claim, hand it over to Buddy.  So that's how I dealt
20  with Buddy historically.
21       Q. Okay.  So would you be the person that
22  would tell Buddy, Here's a claim that needs to be
23  reported?
24       A. Typically it's the manager.
25       Q. Okay.

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 28

1  Exhibit 22 for me.
2      A. Just for my own clarity, since mine doesn't
3  have the sticker, Tuesday, May 22, 2018, 5:40 p.m.,
4  at the top?
5      Q. Yes.
6          MR. O'NEILL: Also, you can refer to the
7  Bates stamp.
8      A. So this is an e-mail exchange between
9  myself and Josh Morton.
10 BY MR. JACKSON:
11     Q. Okay.
12     A. Looks like a chain going back a bit.
13     Q. So we go back -- let's go to the back. We
14 have on May 22, 2018, an e-mail to Mr. Morton from
15 The Cochran Firm, someone named Vickie Amos;
16 correct?
17     A. Correct.
18     Q. And copied Shean Williams. And there's a
19 letter that it says that's attached, and we'll take
20 a look at that letter later, but there's a letter
21 that came in from The Cochran Firm giving notice of
22 representation?
23     A. Yes.
24     Q. That was one of the documents you said you
25 reviewed?

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 29

1     A. Yes.
2     Q. Okay.  So on May 22nd, Josh is with Ardent;
3  is that right?
4     A. He's, yes, Ardent.  He's the managing agent
5  for Waldrop.
6     Q. Okay.  He sends you, upon receipt of this
7  letter, about an hour later, he sends you the
8  letter; right?
9     A. Yes.
10    Q. Okay.  So that's 3:28 p.m. on May 22nd?
11    A. Correct.
12    Q. Is this the first notice you received of
13 the occurrence?
14    A. This is the first notice.
15        MR. RICE:  Object to the form.
16 BY MR. JACKSON:
17    Q. Let me back up.  Is this the first notice
18 you received of the claim?
19        MR. RICE:  Object to the form.
20        MR. JACKSON:  That's fine.
21    A. This is the first time that I, Lanier
22 Coulter, learned of the shooting, when I received
23 the letter, which I'm going to call a preservation
24 of evidence letter --
25 BY MR. JACKSON:

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 35

1      Q. Okay.  Just lingo?
2      A. Just lingo.
3      Q. All right.  Fair enough.
4         So were you the one, rather than Josh,
5   providing notice to Hamby?
6      A. That was my intent, yes.
7      Q. Okay.
8      A. On behalf of Waldrop, to provide notice to
9   their agent.
10     Q. So did you have a conversation with Josh,
11  or before this e-mail was sent?
12     A. In reviewing the e-mails, I would say yes,
13  because --
14     Q. You tried to talk to him at nine the next
15  morning?
16     A. One left off that we were going to speak at
17  nine a.m. on May 23rd, and this e-mail is at 9:58.
18     Q. So after talking to Josh, you sat down and
19  forwarded this letter to Hamby?
20     A. Correct.
21     Q. And you instructed Hamby to -- you say, "My
22  thoughts are for you to notify the Association's
23  respective insurers and let's see if any," paren,
24  "general liability is my thought," closed paren,
25  "want to respond regarding insurance coverage, etc."

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 36

1  Is that right?
2      A. Correct.
3      Q. And in providing this to Hamby, your hope
4  was that, as the agent for Waldrop Park, Hamby would
5  provide notice to the carriers that needed to know?
6      A. It was my hope.  That had been their
7  practice.
8      Q. Okay.  And that was your practice, was to
9  notify the agent, as you testified already?
10     A. Correct.
11     Q. Or for somebody to notify --
12     A. Management, management agent of the
13 association --
14     Q. Okay.
15     A. -- our office, somebody notified the agent
16 for the insurance company.
17     Q. You had never on behalf of Waldrop Park
18 contacted a carrier directly for them to give
19 notice.  Had you?
20     A. Myself as Lanier Coulter, no.
21     Q. Were you aware of anyone at Waldrop Park
22 ever contacting an insurance carrier directly as
23 opposed to going through the agent?
24     A. No.
25     Q. So that was on May 23rd.  Three days later,

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 38

1  would be attorney-client privileged, the phone
2  conversation with Josh Morton.
3      Q. Okay. Let's put it this way: You are
4  unable to testify affirmatively that Josh knew which
5  carriers needed to be given notice?
6      A. On behalf of Waldrop, correct.
7      Q. Okay. So I'm going to hand you Exhibit 8.
8          MR. JACKSON: Does anybody need that?
9          MR. O'NEILL: Please.
10         (Off-the-record discussion.)
11 BY MR. JACKSON:
12     Q. All right. So we'll go to the back. Let's
13 see where we are. So we begin with the e-mail to
14 Buddy on the 23rd from you; right?
15     A. Correct.
16     Q. And then we've got the circle back e-mail?
17     A. Correct.
18     Q. So we're now on May 31st. Buddy responds;
19 right?
20     A. Yes.
21     Q. All right. Buddy responds, "Sorry I was
22 out on vacation, but the information was passed on
23 to Marty and his account manager to be reported to
24 the carriers and it looks like it was reported in
25 November." You received this e-mail on May 23?

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 41

1  that it was -- had been reported in November, unless
2  you want to argue that that's not what --
3       A. I think it says what it says.
4       Q. Well, I mean --
5       A. That's for you guys to argue about.
6       Q. Well, I'm asking you if you have a
7  recollection of what you interpreted that to mean?
8       A. I just answered that question. I read that
9  the carriers were on notice by the agent, that we
10 didn't need to do anything else necessarily because
11 he's telling me the carriers are on notice.
12           I had circled up, I believe, as you walk
13 through, there was me circling back, Josh bringing
14 in other people. I was happy to finally have a
15 response.
16      Q. You didn't notice that he was indicating to
17 you that he had reported an incident in April
18 sometime prior to April, though?
19           MR. O'NEILL: Object to the form.
20           MR. RICE: Object to the form.
21      A. On behalf of Waldrop, I don't have any
22 recollection of even reading Nov.
23 BY MR. JACKSON:
24      Q. I mean, obviously, it wasn't caught. If
25 you'd caught the discrepancy, you would have said,

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 57

1  of the Gilstrap shooting?
2       A. Yes. I mean, yes, it was to put the
3  insurance agent on notice that we got this letter.
4       Q. And was the purpose in you giving the --
5  Waldrop Park and you, Lanier Coulter, giving this
6  information directly to Hamby as the insurance
7  agent, was that in order to establish notice to both
8  Arch and StarStone?
9       A. Yes. My e-mail says, "My thoughts are for
10 you to notify the Association's respective
11 insurers," so.
12          I don't know that I knew Arch and
13 StarStone, but clearly I intended for, plural,
14 insurers to be notified.
15      Q. And I want you to correct me if I'm wrong,
16 Mr. Coulter, but I believe in your testimony with
17 Mr. Jackson you stated that -- you testified that
18 is -- and if I'm saying this wrong, let me know --
19 but customary in the industry?
20      A. In my experience, the way an association
21 notifies insurance of this type of situation, even
22 an incident, is they reach out to their insurance
23 agent, talk to them, provide whatever they've got,
24 tell them about an incident, and their agent relays
25 that to the carrier.

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 62

1  striking a bone or requiring surgery or if it
2  paralyzed him; correct?
3      A. Correct.
4      Q. It has on here on the fourth line, it says,
5  See attached report, but at least on Exhibit 7
6  there's no attached report. Do you know if The
7  Cochran Firm actually did attach the incident
8  report?
9      A. I do not have the incident report.
10     Q. If the incident report had been provided as
11 referenced in The Cochran Firm's letter, would that
12 have been -- I assume that's something you, Waldrop
13 Park, would have produced to everyone?
14     A. Correct.
15     Q. Okay. And you as a lawyer and also
16 speaking on behalf of Waldrop Park, there's a
17 distinction between a claim versus a spoliation
18 letter; correct?
19     A. I don't get into the insurance lingo, but a
20 spoliation policy letter, putting you on notice
21 there may be a claim, you need to protect
22 everything, would be my interpretation.
23     Q. Protect everything meaning documents and
24 items?
25     A. All documents, all records, any video, any

30(b)(6) Gary Lanier Coulter J.R.,    January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 72

1  shooting, I think happened six months or so before
2  Mr. Gilstrap was shot, was reported to Hamby, do you
3  feel Waldrop Park, that it was justified for Waldrop
4  Park or its agent, Ardent, or you on their behalf,
5  was it justified to report the claim and provide
6  notice to Arch and StarStone in the same manner as
7  was done before?
8         MR. JACKSON:  Object to form.
9      A. Again I apologize; I sound like a broken
10 record.  In my experience, that's the only way --
11 BY MR. RICE:
12     Q. Okay.
13     A. -- associations notify.  And I believe
14 Waldrop had done that previously, notify our
15 insurance agent and the agent notified the carriers.
16     Q. And it wasn't just the Prince shooting; it
17 was, as Mr. Jackson mentioned, other claims as
18 well -- water claims and whatnot -- they reported to
19 the insurance agent, Hamby, as opposed to calling up
20 Arch or anybody else.  Correct?
21     A. That's my understanding.
22     Q. Okay.  And on all those other claims,
23 whether it be a water claim, the Prince shooting, or
24 anything else, when Waldrop Park or the management
25 company for Waldrop Park, whether it be Condominium

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 96

1      A. "You must see to it that we are notified as
2   soon as practicable of an 'occurrence' or an offense
3   which may result in a claim.  To the extent
4   possible, notice should include:
5          "How, when, and where the 'occurrence' or
6   offense took place;
7          "The names and addresses of any injured
8   persons and witnesses; and
9          "The nature and location of any injury or
10  damage arising out of the 'occurrence' or offense."
11     Q. All right.  So do you agree with me that
12  pursuant to that paragraph it says that notice
13  should be given to Arch Specialty Insurance Company?
14     A. On that paragraph we just read?
15     Q. Yes.
16     A. On behalf of Waldrop, again, our practice
17  was to notify our agent.  It had been recognized.
18     Q. But do you agree with me that pursuant to
19  looking at that condition of the policy that notice
20  was to be given to Arch Specialty Insurance Company?
21     A. On behalf of Waldrop, the words say what
22  they say.  Our practice was different.  And that's
23  why you have insurance lawyers and I'm not one.
24     Q. All right.
25         (Off-the-record discussion.)

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 102

1  Q. So that --
2  A. Some confirmation that they had gotten the
3  e-mail.
4  Q. So you just wanted to confirm that Hamby &
5  Aloisio had forwarded that letter --
6  A. To the carriers.
7  Q. -- to the carriers?  Okay.
8  A. Yes.
9  Q. Just wanted to make sure.
10     Because, I guess, was it your understanding
11 at that time that, you know, just asking Waldrop
12 Park's insurance agent to place the carriers on
13 notice wasn't sufficient; you wanted them to
14 actually --
15  A. No, my understanding --
16  Q. -- do that second step of placing them on
17 notice?
18  A. No, my understanding was once -- and my
19 understanding was by telling our agent, getting them
20 a copy of that letter, they would let us know if
21 there was more we needed to do.  They're our agent.
22 Our insurance agent.
23  Q. Right.  And as your insurance agent, you
24 relied on them to place the carriers on notice?
25  A. Yes.

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 111

1  BY MR. JACKSON:
2      Q. Okay.  And then you're the one who reported
3  the Gilstrap claim to Hamby to pass on to the
4  insurance carriers?
5      A. Correct.
6      Q. And when you did that, you had never
7  communicated with Arch insurance company in any way?
8      A. To my knowledge, on behalf of Waldrop, no.
9      Q. And you had never communicated with
10 StarStone insurance company in any way?
11     A. To my knowledge, on behalf of Waldrop, no.
12     Q. And at that time you had never read or even
13 possessed the Arch policy?
14     A. On behalf of Waldrop, I'm not aware of the
15 full policy in their possession.
16     Q. Right.
17     A. Or reviewed.
18     Q. And the same is true for the StarStone
19 policy?
20     A. Correct.
21     Q. You didn't rely on anything that you read
22 or communicated verbally with Arch or StarStone in
23 deciding to report the Gilstrap claim to Hamby?
24         MR. O'NEILL:  Object to the form.
25         MR. RICE:  Join.

**Exhibit F**

30(b)(6) Gary Lanier Coulter J.R., January 19, 2022
Starstone National Insurance Vs. Waldrop Condominium Assoc., Inc.

Page 112

1  A. I hadn't read the policies, I believe I've
2  stated, so I wouldn't have been relying on something
3  in written form.
4  BY MR. JACKSON:
5  Q. Okay. Or oral form?
6  A. Well, I think I also testified I hadn't
7  spoken to them.
8  Q. Right. So the answer to my question was,
9  yes, that's a correct statement?
10  A. That's a correct statement.
11  Q. Okay. Do you know, Exhibit 25, I guess,
12  was produced, was the StarStone policy with the
13  Waldrop Park Bates. Do you know when Waldrop Park
14  collected its policies for purposes of producing
15  them?
16  A. I do not.
17  Q. You weren't involved in that process?
18  A. I was not. And, again, to my personal
19  knowledge, didn't have a copy of the policy.
20  Q. Sure.
21  A. Whether Joy Void -- I think was her name --
22  had one, I do not know.
23  Q. Okay. Joy Void was not involved in the
24  decision to report the Gilstrap claim or how to do
25  it?

**Exhibit F**