# EXHIBIT "G"

Page 1

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
2                      ATLANTA DIVISION
3
4    STARSTONE NATIONAL
     INSURANCE COMPANY and ARCH
5    SPECIALTY INSURANCE
     COMPANY,                      CIVIL ACTION FILE
6
                  Plaintiffs,    NO. 1:20-CV-04398-JPB
7
            vs.
8
     WALDROP CONDOMINIUM
9    ASSOCIATION, INC. ARDENT
     RESIDENTIAL LLC, CURTIS
10   GILSTAP, and JESSICA
     GILSTRAP,
11
                  Defendants.
12   ~~~~~~~~~~~~~~~~~~~~~~~~~
13
14
                  30(b)(6) DEPOSITION OF
15                HAMBY & ALOISIO, INC.
                         THROUGH
16                VICTOR MALONE HAMBY
17
18                 October 28, 2021
19                   10:14 a.m.
20
21
                  8425 Dunwoody Place
22                 Atlanta, Georgia
23
24
25         S. Julie Friedman, CCR-B-1476

Exhibit G

Page 2

```
 1                  APPEARANCES OF COUNSEL
 2   On behalf of the Plaintiff StarStone National
         Insurance Company:
 3
         BOVIS KYLE BURCH & MEDLIN LLC
 4       KIM M. JACKSON, ESQ.
         Suite 500
 5       200 Ashford Center North
         Atlanta, Georgia  30338
 6       678.338.3975
         770.668.0878 Fax
 7       kjackson@boviskyle.com
 8   On behalf of the Plaintiff Arch Specialty Insurance
         Company:
 9
         HALL BOOTH SMITH PC
10       MR. THOMAS K. WINGFIELD, ESQ.
         Suite 2900
11       191 Peachtree Street NE
         Atlanta, Georgia  30303
12       404.954.5000
         404.954.5020 Fax
13       twingfield@hallboothsmith.com
14   On behalf of the Defendant Waldrop Park Condominium
         Association, Inc.:
15
         HASSON LAW GROUP LLP
16       MR. KEITH SAMUEL HASSON, ESQ.
         Suite 625
17       3379 Peachtree Road NE
         Atlanta, Georgia  30326
18       678.701.2869
         Keith@hassonlawgroup.com
19
     On behalf of the Defendant Ardent Residential LLC:
20
         WEINSTEIN & BLACK LLC
21       MICHAEL B. WEINSTEIN, ESQ.
         Suite 200-C
22       3050 Amwiler Road
         Atlanta, Georgia  30360
23       404.228.2629
         mike@wblegal.net
24
25
```

**Exhibit G**

30(b)(6) Victor Malone Hamby                October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 3

```
 1          APPEARANCES OF COUNSEL (CONTINUED)
 2    On behalf of the Defendants Curtis Gilstrap and
      Jessica Gilstrap:
 3
          THE RICE FIRM
 4        MR. JAMES A. RICE, JR., ESQ.
          563 Spring Street NW
 5        Atlanta, Georgia  30308
          404.255.4448
 6        404.842.7710 Fax
          Jim@Ricefirm.com
 7
      On behalf of the Deponent:
 8
          LOKEY, MOBLEY AND DOYLE, LLP
 9        KEVIN A. DOYLE, ESQ.
          8425 Dunwoody Place
10        Atlanta, Georgia  30350
          770.640.9441
11        770.640.6646 Fax
          kdoyle@mobley-doyle.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 16

1  premiums for the policies?

2      A.    Typically, we do.  It --  New business,

3  typically, we do.

4          There are times when we place risk with a

5  contracted carrier where they will bill the insured

6  directly; and the insured will pay the contracted

7  carrier directly; and we would not, you know, hold

8  the funds at all.

9      Q.    And how does it work with -- if you use a

10 carrier that you've used a broker for?

11     A.    We would collect the funds.

12     Q.    Okay.  And then you would pay that to the

13 broker?

14     A.    Yes, sir.

15     Q.    Okay.  So in that case, would you be

16 collecting premiums on behalf of the broker?

17     A.    Yes, sir.

18     Q.    Okay.  And do you --  And does Hamby &

19 Aloisio have a contractual agreement with the brokers

20 they use?

21     A.    Some, we do.  Some, we don't.

22     Q.    And how would that work in a case where

23 you don't have contractual relationship?

24     A.    Well, they give us the terms of their

25 quote; and we, you know, bind based on -- or we

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 17

1    place --  We ask them to place coverage based on the

2    terms that they give us.

3         Q.    All right.  And I think I've said that.  I

4    represent Arch Specialty Insurance Company in this

5    litigation.

6              Does Hambio (sic) & Aloisio have a

7    contractual relationship with Arch Specialty

8    Insurance Company?

9         A.    No, sir.

10        Q.    So Arch is --  I'll just say Arch, 'cause

11   it's a little easier.

12             Arch is one of those carriers that if you

13   were going to -- if a client came in and you were

14   going to procure a policy from Arch, you would use a

15   broker?

16        A.    Yes, sir.

17             MR. WINGFIELD:  Okay.  All right.  That is

18        two.

19             (Exhibit 2 was marked for identification.)

20        Q.    (By Mr. Wingfield)  You've been given

21   what's marked as Exhibit 2.  Do you recognize

22   Exhibit 2?

23        A.    Yes, sir.

24        Q.    And what is it?

25        A.    It's an Arch Specialty Insurance Company

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 18

1     policy for Waldrop Park Condominium Association.

2          Q.    All right.  And is that the policy of

3     insurance that Hamby & Aloisio procured on behalf of

4     Waldrop Park?

5          A.    I believe it is.

6          Q.    Okay.  And --

7               MR. DOYLE:  I'll just take a look at this.

8          Just wanted the Bates numbers, Tom.

9               MR. WINGFIELD:  Okay.

10              MR. DOYLE:  I think HAI 52 through 108.  I

11         think that's right.  Yeah.

12              All right.  There you are.

13              THE WITNESS:  Yeah.  Okay.

14         Q.    (By Mr. Wingfield)  All right.  And could

15    you explain to me what role did Hamby & Aloisio have

16    in procuring the Arch policy?

17         A.    We took the information from our

18    prospective insured, as I explained earlier; put that

19    information into an application form, and submitted

20    it to carriers, brokers that we thought would be

21    responsive to that risk.

22         Q.    And do you recall whether Hamby & Aloisio

23    submitted directly to carriers it had a contractual

24    relationship with --

25         A.    No, sir.

**Exhibit G**

30(b)(6) Victor Malone Hamby                    October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 19

1          Q.     -- the application?

2          A.     I don't know.

3          Q.     And this --  And with respect to the

4     ACE -- the Arch policy, I believe you said you

5     submitted the application to a broker?

6          A.     Yes, sir.

7          Q.     All right.

8                 (Exhibit 3 was marked for identification.)

9                 MR. WINGFIELD:  That's three.  I don't

10          know if y'all want copies.

11                MR. DOYLE:  I don't need copies, as long

12          as it's something I already have.

13                MR. WINGFIELD:  And this is just for the

14          record, HAI0001 through --

15                It doesn't seem to have a --  That's

16          weird.  Huh?

17                MR. DOYLE:  The last one doesn't appear.

18                MR. WINGFIELD:  The last page doesn't have

19          a --

20                MR. DOYLE:  It looks like it got cut off.

21                MR. WINGFIELD:  Yeah.  The second-to-last

22          page is HAI000 --

23                MR. DOYLE:  20?

24                MR. WINGFIELD:  -- 20.

25                MR. WINGFIELD:  Do you mind if you give me

Exhibit G

Page 20

1      copies.

2              MR. DOYLE:  Yeah.

3              MR. WINGFIELD:  Thank you.

4              MR. DOYLE:  Let me see what 21 looks like.

5      Q.    (By Mr. Wingfield)  You've been handed

6    Exhibit 3.  Do you recognize this document?

7      A.    Yes, sir.

8      Q.    And what is it?

9      A.    It's a commercial insurance application.

10     Q.    And is this the application that Hamby &

11   Aloisio submitted on behalf of Waldrop Park?

12     A.    Yes, sir.

13     Q.    Did Hamby & Aloisio submit this

14   application to a broker?

15     A.    Yes.  We placed the coverage through a

16   broker, so we would have submitted the application to

17   a broker.

18     Q.    And what broker did Hamby & Aloisio use to

19   procure the Arch policy?

20     A.    We used Amwins Access Insurance Services,

21   LLC out of Stockbridge, Georgia.

22     Q.    And is Amwins a broker that Hamby &

23   Aloisio had a contractual relationship with at that

24   time?

25     A.    I believe we do.  Yes, sir.

**Exhibit G**

Page 23

1    collected it all at once.

2        Q.     And then you forwarded that.

3               When you collected the premium, Hamby &

4    Aloisio paid Amwins; is that correct?

5        A.     Yes, sir.

6        Q.     Hamby & Aloisio didn't directly pay Arch?

7        A.     No, sir.

8        Q.     And after the policy is purchased, who

9    provided a copy of the policy to Waldrop Park?

10       A.     Amwins provided the policy to us.  We

11   provided the policy to Waldrop Park.

12       Q.     And we've discussed that there's no

13   contractual relationship between Arch and Hamby &

14   Aloisio, correct?

15       A.     Yes, sir.

16       Q.     And does Hamby & Aloisio consider itself

17   an agent of Arch?

18       A.     No, sir.

19       Q.     And in the case of procuring the policy,

20   Hamby & Aloisio considered itself -- or considered

21   Waldrop Park its client, correct?

22       A.     Yes.  I believe that'd be correct.

23       Q.     Does Hamby & Aloisio have any authority to

24   act on behalf of Arch?

25       A.     We do not.

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 24

1      Q.    All right.  With respect to Waldrop Park

2   and the procurement of the policy, what

3   representations, if any, did Hamby & Aloisio make to

4   Waldrop Park with respect to its relationship with

5   Arch?

6      A.    I don't believe we made any

7   representations to Waldrop, although I was not

8   directly involved in the --  I'm not the agent for

9   Waldrop, but I don't believe --  We typically don't

10  make any representations outright to an insured as to

11  what our relationship is with a carrier.

12     Q.    So just as a general business practice,

13  Hamby & Aloisio does not make representations to its

14  clients, the insureds, as to its relationships with

15  the carriers?

16     A.    Right.

17           If I'm understanding your question

18  correctly, if I was writing your insurance and I said

19  I'm writing this with Travelers Insurance Company, we

20  represent Travelers directly.  We have a direct

21  contractual relationship.

22           Is that your question?  What you're --

23     Q.    That would be one of them.

24     A.    Yeah.  So no.  We don't do that.

25     Q.    Okay.  So and some of these questions

**Exhibit G**

30(b)(6) Victor Malone Hamby                    October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 25

1    may --  I just want to make sure the record's clear.

2         A.    Sure.

3         Q.    So with respect to policies it procures

4    from Arch, Hamby & Aloisio doesn't represent to its

5    clients, the insureds, that it's the agent of Arch?

6         A.    No, sir.

7         Q.    Okay.  And does it ever --  Does Hamby &

8    Aloisio represent to its clients that it's authorized

9    to act on Arch's behalf?

10        A.    No, sir.

11        Q.    And do you know whether or not any

12   representative of Hamby & Aloisio ever represented to

13   Waldrop Park that Hamby & Aloisio was authorized to

14   act on behalf of Arch?

15        A.    I can speak for myself.  I did not.  I

16   don't believe anyone else did, but I couldn't be 100

17   percent certain.

18        Q.    Who was --  You said you're not the -- you

19   weren't the agent for Waldrop Park.

20        A.    Yes, sir.

21        Q.    Who was the agent?

22        A.    Marty Friedman.

23        Q.    All right.  And what is his position?

24        A.    He's an agent.

25        Q.    And how long has he been with Hamby &

**Exhibit G**

Page 26

1   Aloisio?

2        A.    More than 25 years.

3        Q.    And do you know how long Waldrop Park has

4   been a client of Hamby & Aloisio?

5        A.    I believe they've been a client since

6   2014.

7        Q.    So they were a client prior before the

8   procurement of the Arch Specialty policy?

9        A.    Yes, sir.

10       Q.    And was Marty Friedman always their agent?

11       A.    Yes, sir.

12       Q.    Does Hamby & Aloisio have any materials or

13  just general statements it makes to its clients, the

14  insureds, as to what they need to do if there is a

15  occurrence which might turn into a claim under a

16  policy or there's an actual claim?

17       A.    When we provide the policies to the

18  insureds, typically, the claims information from the

19  carrier is contained in the policy; and we highlight

20  that area for them.

21             Also, I mean, it's --  We do field a lot

22  of claims as well.

23       Q.    Does Hamby & Aloisio ever instruct their

24  insureds that they're to provide Hamby & Aloisio the

25  notice of the occurrence of the claim?

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 27

```
1        A.      No, sir.

2        Q.      Can -- give me a copy of --

3                Give me the policy back.  I just want

4     to --

5        A.      Sure.

6        Q.      I don't have an extra copy, but I want to

7     bring your attention to something.

8                I'm going to show you.  It's Exhibit 2,

9     and it's --  The Bates number is HAI000077 of the

10    Arch policy.

11               What's the title of that page?

12       A.      "Claims Handling Procedures."

13       Q.      And is that --  You were saying that when

14    you deliver a policy to insured, you usually

15    highlight that.  Is that something that you would

16    highlight?

17       A.      Yes, sir.

18       Q.      All right.  And if you'll read that, who

19    does that -- how does that page instruct an insured

20    to make a claim or provide notice of a claim?

21       A.      Notices of each incident claim or suit

22    must be sent immediately to Arch Specialty Insurance

23    Company.

24               Do you want the address and everything?

25       Q.      No.  That's fine.
```

**Exhibit G**

30(b)(6) Victor Malone Hamby                    October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 42

1          (Exhibit 7 was marked for identification.)

2     Q.    (By Mr. Weinstein)  Exhibit 7 is a

3  document produced by Hamby & Aloisio, HAI000109

4  through HAI000112.  I want to direct your attention

5  to the second page.

6          MR. DOYLE:  Whoa.  Is it --  Oh, 109.

7     Yeah.

8          THE WITNESS:  So we're on Page 110?

9     Q.    (By Mr. Wingfield)  Let me make sure I got

10  this right.  Yes.

11     A.    Okay.

12     Q.    It's a e-mail.  I want you to look at

13  that.  It's a May 23, 2018 e-mail from Lanier

14  Coulter, to Josh Morton, Buddy Whitaker; and the

15  subject's Waldrop Park.

16          You see that?

17     A.    Yes, sir.

18     Q.    And is this an e-mail that is part of the

19  business records of Hamby & Aloisio?

20     A.    Yes, sir.

21     Q.    Okay.  And who is Buddy Whitaker?

22     A.    Buddy Whitaker is an agent of Hamby &

23  Aloisio.

24     Q.    And was Waldrop Park his client?

25     A.    No, sir.

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 45

1   with the insurance coverage, et cetera.

2              Did Hamby & Aloisio immediately provide

3   notice of this e-mail and the attached letter to

4   Amwins?

5        A.    We did not.

6        Q.    Did they provide notice to -- directly to

7   Arch?

8        A.    We did not.

9        Q.    So what did Hamby & Aloisio do in response

10  to Mr. Colter's request?

11       A.    As I understand it, Buddy Whitaker

12  forwarded this information to Marty Friedman's

13  account manager, who, in turn, asked Marty Friedman

14  about this.

15             What happened after that, I don't know.

16       Q.    And Marty Friedman's account manager

17  again, that's Allyson Golob?

18       A.    Yes, sir.

19       Q.    And then if you look on the first page of

20  Exhibit 7 of the May 26th e-mail, it's a e-mail from

21  Lanier Coulter, to Josh Morton and Buddy Whitaker.

22             It actually says I just want to circle

23  back on this and make sure Waldrop's insurance

24  providers were notified of this letter management

25  received on the shooting at Waldrop.  Thanks.

**Exhibit G**

Page 50

1    claim.

2         A.    Yeah.  Yeah.

3         Q.    And is there any record of her on

4    May 31st, 2018, or shortly thereafter providing

5    notice to Amwins or Arch of the Curtis Gilstrap

6    claim?

7         A.    No, sir.

8               (Exhibit 9 was marked for identification.)

9               THE COURT REPORTER:  Exhibit 9.

10        Q.    (By Mr. Wingfield)  Exhibit 9 is another

11   set of e-mails that were produced by Hamby & Aloisio,

12   HAI000116 to HAI000118.

13              MR. WEINSTEIN:  Thank you.

14        Q.    (By Mr. Wingfield)  You recognize this

15   document?

16        A.    Yes, sir.

17        Q.    And what is it?

18        A.    It's e-mail correspondence between Lanier

19   Coulter, Buddy Whitaker, Josh Morton, and Allyson

20   Golob.

21              MR. RICE:  What's the date on that?  I'm

22        sorry to interrupt.

23              THE WITNESS:  It's June 6th, 2018.

24              MR. RICE:  Thank you.

25        Q.    (By Mr. Wingfield)  All right.  And then

**Exhibit G**

Page 51

1    so there's a June 6th, 2019 e-mail where Lanier

2    Coulter states, "Thanks Buddy and Marty as well -- my

3    question is whether Josh or I need to do anything at

4    this point or will the carrier contact this firm

5    regarding the Association's policies and limits?

6    Thanks!"

7            Did anyone from Hamby & Aloisio respond to

8    that e-mail?

9        A.    We don't have any record of it in our

10   system.

11       Q.    So as of June 6th, 2018, what had Hamby &

12   Aloisio done to provide Arch notice of the shooting

13   of Curtis Gilstrap in April of 2018?

14       A.    We had not provided notice.

15            (Exhibit 10 was marked for

16            identification.)

17       Q.    (By Mr. Wingfield)  Exhibit 10 is a

18   document produced Hamby & Aloisio, HAI000120 to

19   HAI000123.

20            Do you recognize this document?

21       A.    Yes, sir.

22       Q.    And what is it?

23            MR. DOYLE:  One second.  I just want to

24       make sure I get a quick look.

25            Okay.

Exhibit G

30(b)(6) Victor Malone Hamby                    October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 61

1    think there's another subpoena -- feel free to do

2    that.  There's been some exhibits that have already

3    been marked.  I've got some exhibits I'm going to

4    mark.  Hopefully, they're not too duplicative.

5         A.    All right.

6         Q.    But if you could bear with me.  The same

7    thing with questions.  It's not a --  Obviously, a

8    bright guy.  I'm not here to trick you, so if I ask

9    you the same questions as Mr. Wingfield, it's not

10   intentional or to try to get a different answer.

11             Okay?

12        A.    Yes, sir.

13        Q.    I marked on the break Exhibit 14 to these

14   depositions.  That's the cross-notice of Hamby &

15   Aloisio.  Is that --

16             You've reviewed that, and you're prepared

17   to discuss those topics here today?

18        A.    Yes, sir.

19        Q.    Okay.  And you understand that when you

20   speak today -- I certainly understand your last

21   name's Hamby -- but you're also binding the entity

22   Hamby & Aloisio with each and every one of your

23   answers?

24        A.    Yes, sir.

25        Q.    Okay.  Is Hamby & Aloisio an independent

**Exhibit G**

30(b)(6) Victor Malone Hamby                    October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 62

1   insurance agency?

2       A.    Yes, sir.

3       Q.    Okay.  Is there anything you have to do to

4   be an independent insurance agency, or is that

5   something you can just say I'm an independent

6   insurance agent?

7       A.    There are licensing requirements.

8       Q.    Okay.  And at least for the last five

9   years, have they been a licensed independent

10  insurance agency with the State of Georgia?

11      A.    Yes, sir.

12      Q.    Are they licensed to do business in any

13  other states?

14      A.    Yes, sir.

15      Q.    What states are those?

16      A.    It would be easier for me to tell you the

17  states we're not licensed in.

18      Q.    Let's do that.

19      A.    We're not licensed in Hawaii, New York,

20  Alaska; and I believe that's it.

21      Q.    Okay.  As far as StarStone and Arch,

22  instead of saying their full names, you know I'm

23  talking about the insurance carriers that are the

24  plaintiffs in this case, correct?

25      A.    Yes, sir.

**Exhibit G**

Page 193

1           Did I answer your question?

2      Q.    So in the case of Mr. Rice's letter in

3  October of 2019, did that reminder go to Allyson

4  Golob?

5      A.    Yes, sir.

6      Q.    Did it go to anyone else?

7      A.    Not to my knowledge.

8      Q.    And that reminder, did it remind -- did it

9  reference StarStone at all; or did it just indicate

10  once Arch was put on notice and acknowledged receipt,

11  that that was the end of it.  You wouldn't have to do

12  anymore?

13      A.    Yeah.  It would have said claim

14  acknowledgement received, question mark.  It would

15  not have referenced a company.

16      Q.    So provided that Arch had, by that time,

17  indicated that they had received notice of the

18  claim -- and I think Arch had -- there wouldn't have

19  been any other -- any further follow-up that that

20  suspense system would have suggested?

21      A.    That's correct.

22      Q.    When --  Has Hamby & Aloisio ever reported

23  claims on behalf of other clients to Arch and

24  StarStone before?

25      A.    We have not reported them directly to Arch

**Exhibit G**

30(b)(6) Victor Malone Hamby          October 28, 2021
Starstone National Insurance Company Et Al Vs. Waldrop Park Condominium Association Et Al

Page 194

1    and StarStone.  We would report those claims through

2    the broker that we utilized so --

3        Q.    Has Hamby & Aloisio in the past made

4    reports to Amwins to give notice to both Arch and

5    StarStone?

6        A.    You mean for other account --

7              I don't know really.

8        Q.    If one of your account managers or one of

9    your agents is giving notice to a broker like Amwins

10   and there are multiple carriers, let's say, a general

11   liability carrier and an umbrella carrier, and that

12   agent or account manager is going to give the notice

13   to both carriers, would they fill out a single ACORD

14   form and put the information for both policies on the

15   single ACORD form that they sent to the broker?

16             Would they do separate ACORD forms?

17             How would they go about doing it?

18       A.    Yeah.  It would be a separate ACORD form.

19       Q.    Take a look at Exhibit 9 for me.

20       A.    Okay.

21       Q.    Those four questions mark from Allyson

22   Golob, to Marty Friedman --

23             MR. HASSON:  Is that not nine?

24             THE WITNESS:  Eight.

25       Q.    (By Mr. Hasson)  Sorry.

**Exhibit G**

Page 195

1     A.    I'm familiar with what you're talking
2   about.
3     Q.    Exhibit 8.  Yeah.  Yeah.
4     A.    Yes, sir.
5     Q.    Any --  Sitting here today, any
6   understanding as to what those four question marks
7   mean?
8     A.    What do I do with this?
9     Q.    Yeah.  All right.  Were you paid a
10  commission for placing the StarStone policy?
11    A.    Yes.
12    Q.    Who paid?
13    A.    Amwins.
14    Q.    How is it paid?
15    A.    I'm not sure I understand.
16    Q.    Well, earlier, I think you said with
17  respect to Arch, y'all received the premium from
18  Waldrop Park or someone acting on behalf of Waldrop
19  Park.
20    A.    Uh-huh.
21    Q.    You deducted your commission, and you
22  forwarded the money on to Amwins.
23    A.    Yes, sir.
24    Q.    Is it a similar process with StarStone?
25    A.    The same way.

**Exhibit G**

**Wendi Washowich**

| | |
|---|---|
| **From:** | Josh Morton <josh@myardent.com> |
| **Sent:** | Tuesday, May 29, 2018 1:57 PM |
| **To:** | Lanier Coulter; Buddy Whitaker |
| **Cc:** | Allyson Golob; Marty Friedman |
| **Subject:** | RE: Waldrop Park |

Thanks Lanier, I am coping Allyson and Marty as well.

If Buddy has responded *my apologies* I just got back to the office and playing email catch up.

Regards,



*Ardent Residential is expanding into Florida, the Carolinas and Tennessee!*

**Joshua Z. Morton, CAM**
Regional Portfolio Director

Email: josh@myardent.com
Website: MyArdent.com

Office: 844-9-ARDENT ext. 1004
Direct: 404-400-3099
Fax: 404-969-4698

Closing Letters/Packages can be requested here: Closing & Resale Documents
Condo/HOA Questionnaires can be requested here: Condo & HOA Questionnaires
Need to access your community's portal: Homeowner Login
Online payments can be made here: Homeowner Login
Want to become a preferred vendor? Become a Preferred Vendor

*Interested in our Condo & HOA Management Services?* Condo & HOA Services
*Interested in our Rental Management Services?* Rental Management
*Interested in our Multi-Family Management Services?* Apartment & Multi-Family

This e-mail message and all attachments contain privileged and confidential information intended solely for the use of the addressee. The information contained herein or attached hereto is provided solely for the purpose of informing members of the current financial status of the association and is not intended for public use or distribution. The financial information reported is current only through the date posted on the report. If the reader of this message is not the intended recipient you are hereby notified that any reading, distribution, copying, or other use of this message or its attachments are strictly prohibited and you are requested to delete this message and all copies.

**From:** Lanier Coulter <glc@coultersierra.com>
**Sent:** Saturday, May 26, 2018 6:35 AM
**To:** Josh Morton <josh@myardent.com>; Buddy Whitaker <buddy@hains.com>
**Subject:** RE: Waldrop Park

Buddy

I just wanted to circle back on this and make sure Waldrop's insurance providers were notified of this letter management received on the shooting at Waldrop. Thanks!

1

EXHIBIT

7

10·28·21

tabbies

**Exhibit G**

G. Lanier Coulter, Jr.
Coulter & Sierra, LLC
2800 Century Parkway, Suite 275
Atlanta, Georgia 30345
404.554.2071 Office
404.477.6360 Fax

Notice: This communication is from an attorney and may contain information that is proprietary, attorney/client privileged, attorney work product, or otherwise legally exempt from disclosure. It is intended for the addressee(s) and intended recipient(s) only. If you are not the intended recipient, you are not authorized to intercept, read, print, retain, copy, forward, or disseminate this communication. If you have received this message in error, please notify the sender immediately by phone (404-554-2071) or by return e-mail and destroy all copies of this message (electronic, paper, or otherwise). Thank you.

---

**From:** Lanier Coulter
**Sent:** Wednesday, May 23, 2018 9:58 AM
**To:** Josh Morton <josh@myardent.com>; Buddy Whitaker (buddy@hains.com) <buddy@hains.com>
**Subject:** Waldrop Park

Buddy

Our understanding is that you are the insurer for this Condominium. Josh, the property manager, received this letter from a Plaintiff's firm. Typically I would provide the COI for the Association's policies if the Association's insurer doesn't want to handle the response to this type of letter. Just so you know, it's my understanding we have no records (video, outside security company, logs, etc.) to preserve.

My thoughts are for you to notify the Association's respective insurers and let's see if any (general liability is my thought) want to respond regarding the insurance coverage, etc. If you disagree let me know and if the insurer(s) aren't going to respond just let us know so we can send over the COI for all the policies the Association has in place. Clearly, we will not be outlining any defenses any of the Association's insurer may believe exist at this point on a matter we know very little about. Thanks and I hope you are doing well.

<< File: Gilstrap LOR to Ardent.pdf >>

G. Lanier Coulter, Jr.
Coulter & Sierra, LLC
2800 Century Parkway, Suite 275
Atlanta, Georgia 30345
404.554.2071 Office
404.477.6360 Fax

Notice: This communication is from an attorney and may contain information that is proprietary, attorney/client privileged, attorney work product, or otherwise legally exempt from disclosure. It is intended for the addressee(s) and intended recipient(s) only. If you are not the intended recipient, you are not authorized to intercept, read, print, retain, copy, forward, or disseminate this communication. If you have received this message in error, please notify the sender immediately by phone (404-554-2071) or by return e-mail and destroy all copies of this message (electronic, paper, or otherwise). Thank you.

HAI000110
**Exhibit G**

# THE COCHRAN FIRM - ATLANTA

⚖

100 PEACHTREE STREET, N.W. • SUITE 2600
ATLANTA, GEORGIA 30303
(404) 222-9922 • FAX: (404) 222-0170

May 22, 2018

**VIA MAIL AND EMAIL (Josh@myardent.com)**
Josh Z. Morton, Property Manager
Ardent Residential
PO Box 2800
Sandy Springs, GA 30358

Dear Mr. Morton:

Please allow this letter to inform you that our firm has been retained to investigate the facts and circumstances surrounding the burglary and shooting of Kurtis Gilstrap at the Waldrop Station Condominiums that took place on April 18, 2018 at 11101 Waldrop Place, Decatur, GA 30034. (See attached incident report.) This letter is to request the preservation of certain evidence related to this incident. If you fail to preserve and maintain this evidence, we will seek any sanctions available under Georgia law. R.A. Siegel Co. v. Bowen, 246 Ga. App. 177, 539 S.E.2d 873 (2000). We specifically request that the following evidence be maintained and preserved and not be destroyed, modified, altered, repaired, or changed in any manner:

1. Any copies of video surveillance of the Property on April 17, 2018 and April 18, 2018;

2. Daily logs or other documents prepared by courtesy officers for the day of the Incident and the 5-year period preceding the Incident;

3. All photographs related to the Incident including photographs of the scene and of Kurtis Gilstrap;

4. Any e-mails, electronic messages, letters, memos, or other documents concerning the shooting incident of Mr. Gilstrap;

5. Any emails, documents, or reports maintained by the Property for a 5-year preceding this incident regarding any alleged crime occurring on the property;

6. Any reports, memos, notes, logs or other documents evidencing complaints about crime occurring on the property for the past five years;

7. Any and all documents regarding any investigation into this shooting or any reported incident of crime at property;

HAI000111

**Exhibit G**

8. Any and all documents referring to any contracts, communication, agreements between Property and Pacific Holdings Partnership;

9. Any and all documents referring to any contracts, agreements or communication between Property and any security company.

In addition to our request to preserve evidence, we request that you provide (1) the name of the insurer; (2) the name of each insured; (3) the limits of liability coverage; and (4) a statement of any policy or coverage defense that such insurer reasonably believes is available with regard to each known policy of liability insurance of your insured, including excess or umbrella insurance. Further, please provide a copy of all applicable insurance policies with declaration pages. Please forward our request for information to all affected insurers. All affected insurers are asked to respond tot his request promptly to avoid the filing of a lawsuit at this time.

Thank you for your cooperation in this matter. If you have any questions, please do not hesitate to call us at 404-222-9922.

Sincerely,

Shean D. Williams

SDW/vda
Enclosure

HAI000112

**Exhibit G**

| | |
|---|---|
| **From:** | Lanier Coulter <glc@coultersierra.com> |
| **Sent:** | Wednesday, June 6, 2018 9:42 AM |
| **To:** | Buddy Whitaker; Josh Morton |
| **Cc:** | Allyson Golob |
| **Subject:** | RE: Waldrop Park |

Thanks Buddy and Marty as well – my question is whether Josh or I need to do anything at this point or will the carrier contact this firm regarding the Association's policies and limits? Thanks!

G. Lanier Coulter, Jr.
Coulter & Sierra, LLC
2800 Century Parkway, Suite 275
Atlanta, Georgia 30345
404.554.2071 Office
404.477.6360 Fax

Notice: This communication is from an attorney and may contain information that is proprietary, attorney/client privileged, attorney work product, or otherwise legally exempt from disclosure. It is intended for the addressee(s) and intended recipient(s) only. If you are not the intended recipient, you are not authorized to intercept, read, print, retain, copy, forward, or disseminate this communication. If you have received this message in error, please notify the sender immediately by phone (404-554-2071) or by return e-mail and destroy all copies of this message (electronic, paper, or otherwise). Thank you.

**From:** Buddy Whitaker <buddy@hains.com>
**Sent:** Thursday, May 31, 2018 9:10 AM
**To:** Lanier Coulter <glc@coultersierra.com>; Josh Morton <josh@myardent.com>
**Cc:** Allyson Golob <allyson@hains.com>
**Subject:** RE: Waldrop Park

Hey Lanier,
    Sorry I was out on vacation but the information was passed on to Marty and his account manager to be reported to the carriers and it looks like it was reported in Nov.

    If either of you need additional info, please follow up with Allyson as she has more updated info than I do.

Thank you,

Buddy Whitaker
Commercial Agent
Hamby & Aloisio, Inc.
53 Perimeter Center East Ste 400
Atlanta, Georgia 30346
Direct line    (770) 804-4825
Fax            (770) 551-3289

Have a moment?  Give us a Facebook Review

1



**From:** Lanier Coulter [mailto:glc@coultersierra.com]
**Sent:** Saturday, May 26, 2018 6:35 AM
**To:** Josh Morton <josh@myardent.com>; Buddy Whitaker <buddy@hains.com>
**Subject:** RE: Waldrop Park

Buddy

I just wanted to circle back on this and make sure Waldrop's insurance providers were notified of this letter management received on the shooting at Waldrop. Thanks!


G. Lanier Coulter, Jr.
Coulter & Sierra, LLC
2800 Century Parkway, Suite 275
Atlanta, Georgia 30345
404.554.2071 Office
404.477.6360 Fax

Notice: This communication is from an attorney and may contain information that is proprietary, attorney/client privileged, attorney work product, or otherwise legally exempt from disclosure. It is intended for the addressee(s) and intended recipient(s) only. If you are not the intended recipient, you are not authorized to intercept, read, print, retain, copy, forward, or disseminate this communication. If you have received this message in error, please notify the sender immediately by phone (404-554-2071) or by return e-mail and destroy all copies of this message (electronic, paper, or otherwise). Thank you.

---

**From:** Lanier Coulter
**Sent:** Wednesday, May 23, 2018 9:58 AM
**To:** Josh Morton <josh@myardent.com>; Buddy Whitaker (buddy@hains.com) <buddy@hains.com>
**Subject:** Waldrop Park


Buddy

Our understanding is that you are the insurer for this Condominium. Josh, the property manager, received this letter from a Plaintiff's firm. Typically I would provide the COI for the Association's policies if the Association's insurer doesn't want to handle the response to this type of letter. Just so you know, it's my understanding we have no records (video, outside security company, logs, etc.) to preserve.

My thoughts are for you to notify the Association's respective insurers and let's see if any (general liability is my thought) want to respond regarding the insurance coverage, etc. If you disagree let me know and if the insurer(s) aren't going to respond just let us know so we can send over the COI for all the policies the Association has in place. Clearly, we will not be outlining any defenses any of the Association's insurer may believe exist at this point on a matter we know very little about. Thanks and I hope you are doing well.

<< File: Gilstrap LOR to Ardent.pdf >>


G. Lanier Coulter, Jr.
Coulter & Sierra, LLC
2800 Century Parkway, Suite 275
Atlanta, Georgia 30345

2

HAI000117
**Exhibit G**

404.554.2071 Office
404.477.6360 Fax

Notice: This communication is from an attorney and may contain information that is proprietary, attorney/client privileged, attorney work product, or otherwise legally exempt from disclosure. It is intended for the addressee(s) and intended recipient(s) only. If you are not the intended recipient, you are not authorized to intercept, read, print, retain, copy, forward, or disseminate this communication. If you have received this message in error, please notify the sender immediately by phone (404-554-2071) or by return e-mail and destroy all copies of this message (electronic, paper, or otherwise). Thank you.

HAI000118

# Exhibit G